HEMMINGWAY, by guardian, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*December 21, 1886 — January 11, 1887.*

*Railroads: Negligence: Running train past station.*

In accordance with the regulation and usage of the defendant company a freight train arriving at a station was run some distance beyond the platform before stopping, in order to allow a train to pass from a side track in the opposite direction, and was then backed down to the platform.   While it was passing the platform in the first instance, the plaintiff, a passenger on the train, jumped therefrom to the platform and was injured.   *Held*, that there was no negligence in running the train past the platform without stopping.   [Whether in such case the defendant was bound to notify the passengers that the train would pass the platform without stopping, not determined.]

APPEAL from the Circuit Court for *Rock* County.

This action was brought to recover damages for personal injuries suffered by the plaintiff, alleged to have been caused by the negligence of the defendant company. A trial resulted in a verdict and judgment for $10,000 damages. Motions for a nonsuit and a new trial were denied. The defendant appeals from the judgment.

There is no controversy as to the material facts in the case, and they are summarized substantially alike in the briefs of the respective counsel. The summary in the brief of counsel for the defendant is a correct and sufficient statement of the facts material to the questions considered in the opinion. It is as follows:

"On the 20th day of October, 1882, the plaintiff, *Charles H. Hemmingway*, being then nearly ten years and ten months of age, took passage at Hanover, in this state, upon a freight train of the defendant, for Janesville, a distance of about seven miles. He was unaccompanied by his father, mother, or any other person having him in charge. He took a seat in the caboose attached to the rear of said train, and remained therein until shortly before arriving at the depot at Janesville. The train upon which he was, No. 4, was due at Janesville at 2 P. M. At that station it met a mixed train, No. 11, going in the opposite direction towards Albany. The mixed train was one which arrived from Milton Junction at 1:45 P. M. That train when it came in drew up along-side the platform at the depot, discharged such passengers and baggage as were destined for Janesville, and then backed up east of the depot onto a side track, known as the 'lumber track,' and awaited the arrival of the, train from the west upon which the plaintiff was a passenger. The usual custom of operating these trains under the time-card then in force, and which had been in force since April 9, 1882, was as follows: Train No. 4, upon its arrival in Janesville, did not stop at the depot in the first instance,

but passed up the main track eastward far enough to clear the 'lumber-track' switch, and stopped with its caboose at a distance of about 283 feet from the depot and 198 feet from the east end of the depot platform, and along-side the 'lumber track.' The mixed train, standing upon the 'lumber track,' then passed out through the switch onto the main track, down opposite the depot and depot platform, received its west-bound passengers and baggage, and departed west at 2:10 P. M. Immediately after the departure of the mixed train, train No. 4 backed down the main track, so that its caboose would be opposite the depot and the platform, where it stopped and discharged such of its passengers as had not already alighted, and its baggage and local freight if there were any, and afterwards drew up to the yard east of the depot, did its switching, and took its departure for Milton. This method of operating the trains continued until the adoption of a new time-card, changing the time of these trains, November 5, 1882. It was frequently the case that passengers destined for Janesville left the caboose while it was at a stand-still on the main track east of the depot adjoining the 'lumber track.'

" On the day of the accident, train No. 4, upon which the plaintiff was a passenger, stopped at the round-house and coal-shed, about 900 feet west of the depot, where the engine took water and coal. The train then pulled up on the main track, past the depot and platform, to the point above referred to, opposite the 'lumber track.' Shortly after leaving the round-house the plaintiff left his seat and went out upon the front platform of the caboose, reaching it just as the caboose was passing the west end of the depot. A man named Eddy, who was a passenger on the same train, had already preceded him, and was standing on the caboose platform as the plaintiff came out of the car. The plaintiff asked Eddy if he thought the train 'would stop at the depot;' the latter replied that he 'guessed not,' and thereupon

passed down the steps of the caboose platform, and jumped off from the lower step to the depot platform, a distance of about four inches, and followed along with the train a few steps in an easterly direction. Immediately after Eddy had jumped from the train the plaintiff passed down onto the lower step of the caboose platform, and taking hold with his right hand of the front railing of the car, jumped to the depot platform. He followed with the train for a step or two, when he struck against Eddy, which caused him to turn and stagger, and he fell and rolled off the depot platform under the caboose, with his right arm across the north rail of the track, and the front wheels of the caboose passed over and crushed his arm, necessitating amputation between the wrist and elbow. During the time in which the train was running from the round-house to the depot, the two brakemen were on the top at the brakes preparing to stop the train at the usual place. The conductor rode on the engine from the round-house to the depot, where he jumped off and went into the office on the north side of the building to register the arrival of his train, receive and deliver his way-bills, and get such orders as awaited him at the train dispatcher's office. There were no other employees in charge of the train except the engineer and fireman, who were in their proper places on the engine. Besides the man Eddy and the plaintiff, there were two other passengers in the caboose,— a Mrs. Smith, of Hanover, and an employee of the company, named Charles Luckfield,— both of whom waited in the caboose until it stopped east of the depot, where they left the car and went up town. The train stopped at the usual place east of the depot, and, after the departure of the mixed train west, backed down to the depot platform. The point where the plaintiff jumped from the train to the depot platform was from 15 to 30 feet east of the depot. The platform extends 95 feet eastward from the east end of the depot building."

There are other facts in the case bearing upon the question of the alleged contributory negligence of the plaintiff; but inasmuch as that question is not determined by the court they are omitted in the above statement of facts.

*John W. Cary*, attorney, and *H. H. Field*, of counsel, for the appellant, argued, among other things, that there was no negligence in running the train past the depot on its arrival at the station. A railway company is not bound to furnish the same accommodations and conveniences to persons traveling upon freight trains as to those traveling on passenger trains, and it may make reasonable rules and regulations for the government of such trains, which are binding upon passengers taking that mode of conveyance. Thompson on Carriers of Pass. 234, 343; *Galena & C. U. R. Co. v. Fay*, 16 Ill. 568; *Chicago, B. & Q. R. Co. v. Hazzard*, 26 id. 373; *Ill. Cent. R. Co. v. Nelson*, 59 id. 110, 112; *Dunn v. G. T. R. Co.* 58 Me. 187; *Arnold v. I. C. R. Co.* 83 Ill. 273, 281; *Murch v. Concord R. Co.* 29 N. H. 9, 42; *Chicago & A. R. Co. v. Randolph*, 53 Ill. 510; *Plott v. C. & N. W. R. Co.* 63 Wis. 511, 516. This case is not one of a failure of the train to stop at the depot, but a temporary passing the depot and then returning for the purpose of discharging passengers and baggage. This element of fact distinguishes it from nearly every reported decision. Such a manner of doing business is nowhere held negligent or improper. See *Taber v. D., L. & W. R. Co.* 4 Hun, 765; *S. C.* 71 N. Y. 489; *Ill. Cent. R. Co. v. Nelson*, 59 Ill. 113; *Ohio & M. R. Co. v. Schiebe*, 44 id. 460; *Dillaye v. N. Y. C. R. Co.* 56 Barb. 30; *McDonald v. C. & N. W. R. Co.* 26 Iowa, 124, 142; *Comm. v. B. & M. R. Co.* 129 Mass. 502; *Weller v. L., B. & S. C. R. Co.* L. R. 9 C. P. 126; *S. C.* 8 Eng. (Moak), 441; *Robson v. N. E. R. Co.* 32 L. T. Rep. (N. S.), 551; *Lewis v. L., C. & D. R. Co.* L. R. 9 Q. B. 66; *S. C.* 7 Eng. (Moak), 119, 123; *Bridges v. N. L. R. Co.* L. R. 7 H. L. App. Cas. 213; Shearm. & Redf. on Neg.

sec. 277. Nor was it negligence for the employees of the defendant not to notify the plaintiff that the train would pass the depot in the first place, and then return to the platform to allow passengers to alight. The name of the station had not been called. The English courts have generally held that even the calling of the station, without accompanying circumstances, furnishes no invitation to a passenger to alight, and that unless the train is stopped after the station has been called, or has come to a very slow rate of speed, the passenger is not entitled to assume that the time has come to leave the train. *Bridges v. N. L. R. Co.* L. R. 6 Q. B. 377; L. R. 7 H. L. Cas. 213; 9 Eng. (Moak), 165; *Lewis v. L., C. & D. R. Co. supra; Weller v. L., B. & S. C. R. Co. supra; Cockle v. L. & S. E. R. Co.* L. R. 5 C. P. 457; 7 id. 321; 2 Eng. (Moak), 648; *Praeger v. B. & E. R. Co.* 24 L. T. Rep. (N. S.), 105; Wood's Browne on Carriers, sec. 487; 2 Wood on Railways, 1123, 1192; Hutchinson on Carriers, sec. 616. Cases in which passengers injured in alighting from trains have been allowed to recover can all be grouped into one or the other of the following classes: (1) Where the station has been called, and the train has come to a stop before reaching the depot, and the passenger, supposing it to be at the depot, has been injured in alighting by the train starting up without giving him a reasonable time to alight. *Wood v. L. S. & M. S. R. Co.* 49 Mich. 370; *M. & L. R. R. Co. v. Stringfellow,* 44 Ark. 322; *S. C.* 21 Am. & Eng. R. Cas. 374; *Central R. Co. v. Van Horn,* 38 N. J. Law, 133; *E. T., V. & G. R. Co. v. Conner,* 15 Lea, 254; *Bartholomew v. N. Y. C. & H. R. R. Co.* 20 N. Y. Weekly Dig. 166. (2) Where the station has been announced and the train has passed the depot and stopped, and the passenger has been injured in alighting from similar causes. *M. & C. R. Co. v. Whitfield,* 44 Miss. 466; *S. C.* 7 Am. Rep. 699, *note; Taber v. D., L. & W. R. Co.* 71 N. Y. 489; *C. & I. C. R. Co. v. Farrell,*

31 Ind. 408; *Weller v. L., B. & S. C. R. Co.* L. R. 9 C. P. 126; *Nicholls v. G. S. & W. R. Co.* 7 Ir. Rep. C. L. 40. (3) Where the station has been announced and a stop made at the depot, and the passenger has been injured by reason of the insufficient time allowed for getting off, or the movement of the train while in the act of getting off, or by the train not being brought abreast of the platform. *Burrows v. Erie R. Co.* 63 N. Y. 556; *Brooks v. B. & M. R. Co.* 135 Mass. 21; *S. C.* 16 Am. & Eng. R. Cas. 345; *Sauter v. N. Y. C. & H. R. R. Co.* 66 N. Y. 50; *Cartwright v. C. & G. T. R. Co.* 52 Mich. 606; *S. C.* 50 Am. Rep. 274, *note.* (4) Where the station has been announced and the train has been stopped at a dangerous place, and not at the depot. *Boss v. P. & W. R. Co.* 21 Am. & Eng. R. Cas. 364; *Brassell v. N. Y. C. & H. R. R. Co.* 84 N. Y. 241; *T. H. & I. R. Co. v. Buck,* 96 Ind. 346; *Penn. R. Co. v. White,* 88 Pa. St. 327; *Hulbert v. N. Y. C. R. Co.* 40 N. Y. 145; *McKimble v. B. & M. R. Co.* 141 Mass. 463. (5) Where the station has been announced and the train has not been stopped at all, and the passenger has been injured in jumping from the train. *Edgar v. Northern R. Co.* 16 Am. & Eng. R. Cas. 347, *note; S. C.* 22 id. 433; *St. L., I. M. & S. R. Co. v. Cantrell,* 37 Ark. 519; *Bucher v. N. Y. C. & H. R. R. Co.* 98 N. Y. 128.

*John Winans* and *Ogden H. Fethers,* for the respondent, contended, *inter alia,* that the rule that a railway company undertaking to carry passengers, is bound to exercise the highest degree of diligence, applies irrespective of any distinction between different kinds of trains. *Dunn v. G. T. R. Co.* 58 Me. 187; *Hazard v. C., B. & Q. R. Co.* 1 Biss. 503; *Edgerton v. N. Y. & H. R. Co.* 39 N. Y. 227; *I. & St. L. R. Co. v. Horst,* 93 U. S. 291; *Lucas v. M. & St. P. R. Co.* 33 Wis. 41; *Arnold v. Ill. Cent. R. Co.* 83 Ill. 273. It applies, therefore, in favor of a person riding on a train for the carriage of freight only, where he is affirmatively shown to

have been admitted so to ride by an authorized agent or offi-
cer, and on payment of fare, so as to be a passenger. *Eaton
v. D., L. & W. R. Co.* 57 N. Y. 382; *C. & A. R. Co. v. Flagg*,
43 Ill. 364. It is the duty of a train carrying passengers to
stop at the platform in such a manner that passengers may
avail themselves of it without unnecessary exposure. *Dela-
matyr v. M. & P. du C. R. Co.* 24 Wis. 578–583; *Hartwig
v. C. & N. W. R. Co.* 49 id. 358; *St. L., I. M. & S. R. Co.
v. Cantrell*, 37 Ark. 519; 1 Rorer on Railroads, 479; *T. H.
& I. R. Co. v. Buck*, 96 Ind. 346; *Burrows v. Erie R. Co.*
63 N. Y. 556–559.

LYON, J. The negligence charged upon the defendant in
the complaint is the failure of its servants, in charge of the
freight train on which the plaintiff was a passenger, to
stop the train opposite the depot or depot platform when
it first arrived there, or to inform the plaintiff that it would
not be stopped there in the first instance.

At the request of the defendant's counsel, the court in-
structed the jury that "the servants of the defendant, in
the operation of the freight train, were not negligent in not
anticipating that the plaintiff would attempt to leave the
train at the time and in the manner he did." This was
equivalent to an instruction that it was not the duty of the
conductor or train-men to notify the plaintiff that the train
would not, in the first instance, be stopped at the depot or
platform; for, if they were not bound to anticipate that
the plaintiff would so attempt to leave the train, there could
be no necessity or obligation to give him such notice.

Although there is some general language in the elaborate
and able charge of the learned circuit judge from which it
may be claimed that he left it to the jury to say whether
the failure to give the plaintiff such notice was negligence,
we think he did not intend to submit that question to the

jury, and they must have understood that it was not sub-mitted to them.

The charge of negligence predicated upon the failure to give the notice having thus been eliminated from the case, the only negligence imputed to the defendant is the failure to stop the train in the first instance at the depot or plat-form, instead of passing the same and going from twelve to fifteen rods further east on the main track before stopping. If the judgment is sustained, it must be upon the sole ground that the defendant was negligent in that behalf.

The question whether the injury complained of was caused by the negligence of the defendant was submitted to the jury, and by the jury was resolved in the affirmative. It is obvious that this was the exact equivalent of a submission of the question whether the defendant company was guilty of negligence because it ran the train upon which the plaint-iff was a passenger past the depot platform without stopping there. The verdict answers this question in the affirmative, and the judgment rests solely upon this finding.

There is no general rule of law which requires a railroad company to stop any of its trains when it *first* reaches the depot or depot platform at a station at which passengers are to leave the train. If it be a passenger or mixed train, the company must ordinarily stop the train and allow pas-sengers to disembark on the depot platform; but it may run its trains by the platform in the first instance, if that is re-quired by the exigencies of its business, and afterwards return the same thereto. But if the company carry passen-gers upon its freight trains (as in the present case), we are aware of no rule of law which makes it the duty of the company to give such passengers an opportunity to disem-bark on the depot platform. In many, perhaps in most, cases this would be impracticable; and it is common knowl-edge that it is not usually done. The company fulfils all

legal requirements if it affords such passengers sufficient opportunity to leave the train at a reasonably safe and convenient place upon the depot grounds of the station, although not at the depot or platform. We are not here considering how far the obligation of the company to a passenger may be modified or affected by the custom of the company in operating its trains, known to the passenger, and upon which he relies. No such question is involved in this case.

The exigencies of the defendant's business rendered it necessary that it should run the train on which the plaintiff was a passenger past the depot, without stopping at the depot or platform. The train had been usually so run for several months before the plaintiff was injured. The regulation and usage of the company in that respect were reasonable and proper, and no negligence can justly be imputed to the company because it ran this freight train beyond the depot platform without stopping at the platform. It was error, therefore, to submit to the jury the question whether it was negligence so to run the train. The circuit court should have held, as matter of law, that the defendant was not negligent in failing to stop the train at the depot platform. As the case was put to the jury on the other allegation of defendant's negligence, this ruling would necessarily have resulted in a nonsuit or in a direction to the jury to find for the defendant. Of course, the error above indicated is fatal to the judgment.

Whether the court ruled correctly or otherwise in holding that the defendant was under no obligation to anticipate that the plaintiff would attempt to leave the train when he did (which we have seen was equivalent to a ruling that it was not bound to notify the plaintiff that the train would pass the depot without stopping) is a question not properly before us on this appeal. Hence we do not determine it.

Neither do we here determine whether the trial court should have submitted to the jury the question of the alleged contributory negligence of the plaintiff.   These are close questions on the proofs, and it is so doubtful how they should be determined that we venture the suggestion that the case is eminently a proper one for negotiation and compromise between the parties, rather than for further litigation.

*By the Court.* — Judgment reversed, and cause remanded for a new trial.