Dowd, Respondent, vs. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*December 12, 1892 — January 10, 1893.*

*Railroads: Carriers: Duty to have platforms safe for persons accompanying passengers.*

The rule that it is the duty of a railway company to have its station platform reasonably safe for persons accompanying an intending passenger who is about to take a train in the course of regular pas-

84   105
90   515
84   105,
96   298
84       105
s20 LRA 527n
51 LRA 121n

Dowd vs. Chicago, Milwaukee & St. Paul R. Co.

senger traffic, does not extend to the case of persons accompanying one who is about to leave in a freight car in charge of live-stock, although he had been allowed to load such stock into the car at the freight platform on one side of the station (instead of at the stockyards as was customary), from which place the car was to be taken in the night by a freight train which did not usually stop at that station and was not allowed to carry passengers and for which the station was never kept open, and although he and his friends had been allowed by the agent to occupy the waiting room.

APPEAL from the Circuit Court for *Rock* County.

This action was brought to recover damages for personal injuries received by the plaintiff at Allen's Grove station on the defendant's railway, in consequence, as it is alleged, of the negligence on the part of the defendant in not providing a proper platform, hand rails, lights, etc., at said station, the absence of which, it is charged, caused the plaintiff's injuries. The station is a small one, about a mile from the village of Allen's Grove, where the plaintiff and her husband resided, and consisted of one small building, with a waiting room for passengers at the east end and a freight room at the west end; the office being between the two rooms. There was a long, low platform on and along the south side of the building, and next to the main track, called and used as a passenger platform. At the west end of the building on the north side, and northwest of the building, is a high platform on a level with the floor of a freight car, so that freight may be easily loaded and unloaded, called and used as a freight platform; and next to it, and on the north side, is a side track for the accommodation of freight business. There is an inclined platform between the freight and passenger platforms at the west end of the building, nine feet wide, sloping from the former to the latter. At the northwest corner of the freight platform there were steps extending to the ground, but there was no hand rail on the steps, nor any guard rail on the platform at the west end or north side thereof. These steps

were the only means of reaching the ground at or west of the building. It was customary for persons coming to the station with teams to use these steps to get upon the platform. There are no steps at either end of the passenger platform. It extends along the main track between 200 and 300 feet, and slopes gradually to the ground, and 100 feet thereof is west of the building.

The plaintiff's husband had arranged with defendant's agent for a car to ship some household furniture, etc., belonging to another party, and six horses, from Allen's Grove to Emmettsburg, Iowa, which he thought of making their home, and his contract for the carriage of the goods and horses included the carriage of the plaintiff's husband on the freight train as a part of the contract. It appeared that the platform and steps had been in the same condition for ten or fifteen years as on the occasion in question, and that the freight platform had never been lighted except when excursion trains were running. The plaintiff took a lighted lantern with her to the station that evening. She had lived at Allen's Grove, a mile from the station, about fifteen years, and during that time had been up and down those stairs a dozen times, perhaps, and was frequently at the station, and knew the situation of the platforms, and had frequently got off from the train at this station, and as frequently took the train to go away. Passengers coming to take trains, or leaving trains, come up from the eastern or low end of the platform, and in leaving the station they usually take the same course. The company had stockyards at the station west of the depot, used for the purpose of shipment of live stock. Cattle and horses were usually loaded into the cars from the cattle chute. On this occasion plaintiff's husband requested to be allowed to load the horses from the high freight platform, and the station agent permitted him to make that use of it. According to the course of business, if the horses

Dowd vs. Chicago, Milwaukee & St. Paul R. Co.

had been loaded into the car at the stockyards they would have taken it from where it stood there into the train. The station agent had regular office hours, ending at 6 o'clock P. M. On this occasion, after the horses had been loaded into the car, he made out the stock contract and the receipt. Mr. Dowd was to go along with the car, and in it, for the purpose of taking charge of the stock. The agent notified the agent at Elkhorn to have the car taken, and went home at about half-past 10, having made out a way bill for the car, and put it in the bill box by the waiting-room door, so the conductor could get it when he came after the car, the agent directing the parties there to put out the light and close the waiting-room door when they went. He bade them good night, and told them he was going home. No persons other than the plaintiff and her party appear to have been left in or about the station. The plaintiff stated that she knew the time the train was due, and went there at 10 o'clock because she had an anxiety to see the horses in the car; had never seen anything of the kind, and went down there to be with Mr. Dowd while he had to wait, and see him off, but did not go entirely out of curiosity. The "Limited Liability Live-Stock Contract" in question, for car 33,588, provided that "the parties in charge of the same, and who had signed their names in ink, were entitled under the rules to pass in charge of live stock shipped under this contract;" and the name of H. A. Dowd was entered on the contract as being so entitled to pass. "Agents and conductors were instructed not to permit any but owners of live stock or their *bona fide* employees to pass free, in charge of the same."

The plaintiff, with her daughter and a Mrs. Wilbur, drove to the station, arriving at about 10 o'clock, and, leaving their vehicle in a shed across the track on the north side of the track and northwest of the station, reached the platform by the steps already described, and from thence went

into the waiting room, where they remained with her friends until the train arrived, which was about 2 o'clock in the morning, when they all left the waiting room and went to the car that contained the horses, etc., standing on the north side of the freight platform. The night was dark, and there was no moon. There were no lights about the platform or station, except in the waiting room, though there was a lamp-post on the low or passenger platform west of the station building. There were some lanterns in the party,— two or three at least,— held by those in or about the car, near the door. There was a difference of testimony as to how much they lighted the platform at or near the steps. When they reached the car Mrs. Wilbur said good-bye to the plaintiff's husband, and started to go down the steps to the ground. It was very dark, so that she had to sit down, and feel her way down the steps. The plaintiff bade her husband good-bye, and kissed him, and started to go down the steps. Huber and McKinney, who were there and had lanterns, testified that as she turned to leave her husband she put her handkerchief to her face, as if weeping, but she denied this. She said it was so dark that she *could not see where to step, or where the platform ended and the steps began,* so she felt her way, but knew about where the steps were, and had used them when she came there, and was familiar with the depot building, platform, and steps. Reaching the edge of the platform, she felt for the steps with her foot, and found the step with her right foot, and just then Mrs. Wilbur, who reached the ground, told her to get across the track before the engine came along. That she glanced up the track, and thought by the sound that the engine was starting down on that track, and then she started to place her left foot on the step, but was so near the left end of it that her foot did not strike the step, and she fell to the ground, sustain-

ing the injuries complained of. That she did not think to ask for a lantern to light her way down the steps.

The train in question was strictly a freight train, carrying through freight, stopping at this station only when ordered to take in a car, as in this instance, and during a period of two years there were but two shipments from this station by this train,— one by plaintiff's husband, and another by another party. This train was not allowed to, and did not, carry passengers, and the station agent was not allowed to, and did not, sell tickets for this train, and never kept the station open for it. The only persons allowed to ride on it, other than the train men, were those who accompanied stock for the purpose of caring for it while in transit.

The defendant requested the court to direct a verdict for the defendant, but this was refused. The defendant asked the court to instruct the jury (1) that they could not find the defendant liable because of the fact that there was neither a guard nor rail upon or near the edge of the depot platform; (2) nor because of the fact that there was neither any guard nor rail to either side of the stairway or steps leading from the platform to the ground; (3) nor because it did not have a person present to warn the plaintiff of the danger of falling from said platform or steps; (4) nor because it did not have the platform and stairway lighted; (5) that the defendant, under the facts disclosed, did not owe to the plaintiff any duty in respect to the several matters above mentioned; (6) that as the plaintiff came there for her own gratification, and not by the invitation of the defendant, it owed her no active duty or care; that she was, at most, a mere licensee, and took the license with all the perils incident to it; that when she came to the depot she knew that the platform and steps were not lighted, and that in continuing there and going therefrom she did so

Dowd vs. Chicago, Milwaukee & St. Paul R. Co.

with all the risks incident to an unlighted depot platform and steps, such as existed at that place at that time; (7) that it was her duty to exercise such care as was needful under the circumstances to ascertain whether it was safe for her to step from the platform before doing so. If the darkness of the night was such that she could not see where to step, and the jury found that there was a lantern or light near at hand which she could have used or had the use of by asking, and that, had she used such light, she could have left the platform and gone down the steps in safety, but neglected to use such light, and proceeded to go down the steps in the dark, then she took the risk of falling, and was not in the exercise of ordinary care, but was guilty of negligence, and the verdict should be for the defendant. These several instructions were refused.

Plaintiff had a verdict for $3,500, and a motion to set it aside and for a new trial, on the ground that it was contrary to law and contrary to the evidence, was denied. Judgment was entered on the verdict, and the defendant appealed.

For the appellant there was a brief signed by *John T. Fish* and *Jackson & Jackson*, attorneys, and *Burton Hanson*, of counsel, and a brief in reply signed by *Burton Hanson*, of counsel; and the cause was argued orally by *Mr. Hanson*.

For the respondent there was a brief by *Fethers, Jeffris & Fifield*, and oral argument by *O. H. Fethers* and *M. G. Jeffris*. They contended, *inter alia*, that friends going to the station to meet or see a passenger depart are lawfully there and can recover when injured by the carrier's negligence. They are not mere licensees. *Patten v. C. & N. W. R. Co.* 32 Wis. 524; *Hamilton v. T. & P. R. Co.* 64 Tex. 251; *S. C.* 53 Am. Rep. 756; *McKone v. M. C. R. Co.* 51 Mich. 601; *Watkins v. G. W. R. Co.* 37 L. T. N. S. 193; *Ill. C. R. Co. v. Hammer*, 72 Ill. 347; *Atchison, T. & S. F.*

*R. Co. v. Johns,* 36 Kan. 769; 1 Rorer, Railroads, 475; Bishop, Non-Contract Law, sec. 1109; 19 Am. & Eng. Ency. of Law, 934, note 1; 16 id. 414, note. That Mr. Dowd was a passenger, see *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447, 454–456; *Wagner v. M. P. R. Co.* 97 Mo. 512. The duty of the railroad company to furnish safe platforms and approaches is not only for the benefit of passengers and their friends, but for those who come to look after freight or who have any lawful business at such places. *Tobin v. P., S. & P. R. Co.* 59 Me. 183; *Toledo, W. & W. R. Co. v. Grush,* 67 Ill. 262. This duty is to furnish railings, lights, etc., when necessary for the protection of those lawfully on the company's premises. *Quaife v. C. & N. W. R. Co.* 48 Wis. 513; *Patten v. C. & N. W. R. Co.* 32 id. 524; *Osborn v. Union F. Co.* 53 Barb. 629; *Central R. & B. Co. v. Smith,* 80 Ga. 526.

PINNEY, J. There is no conflict in the evidence in relation to the duty, if any, which the defendant owed the plaintiff, or as to the facts relied on to show that the defendant was guilty of negligence causing the injury which she sustained. All the evidence is embraced in the bill of exceptions, and the court having refused to direct a verdict for defendant, and to set aside the verdict on the ground that it was contrary to law and the evidence, the question to be determined is wholly one of law.

The transaction in question between the plaintiff's husband and the railway company is relied on, in virtue of which it is alleged that the company owed the plaintiff a duty; but it could arise only, if at all, by virtue of her privity or legal relation, under the circumstances, with her husband. The particular business in hand had no relation to or connection with the passenger business or traffic of the company, but concerned only the method of conducting its freight traffic and business, and the rights and duties

arising out of it in the carriage of live stock. The fact that
the plaintiff's husband was allowed to accompany the train,
and ride in the car or on the train to take care of the
horses, without charge for it other than the sum paid for
the car, was a mere incident of the carriage of the stock,
and did not give him all the rights of an intending passen-
ger on a passenger train, though he would not be charge-
able, if injured on the trip by the neglect of the company,
with contributory negligence because riding in a freight
car and exposed to greater peril than if he rode in a pas-
senger car. *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis.
447. We consider it misleading to treat the rights of the
plaintiff and her husband, and the duties the company
owed them, or either of them, upon the basis or from the
standpoint that the husband was an intending passenger in
the ordinary passenger traffic of the company. The real
nature of the transaction and attending circumstances must
be considered, with a view of ascertaining what, if any,
duty the company owed the plaintiff.

The company owes certain duties, no doubt, in regard to
the safety of its platform, to those who come upon it in
pursuit of a matter of *common interest* to both. "The prin-
ciple appears to be that *invitation* is inferred where there
is a common interest or mutual advantage, while a license
is inferred where the object is the mere pleasure or benefit
of the person using it." Camp. Neg. § 33; *Bennett v. Rail-
road Co.* 102 U. S. 585. A licensee who enters upon or
uses premises by permission only, without any enticement,
allurement, or inducement being held out to him by the
owner or occupant, cannot recover damages for injuries
caused by obstructions or insufficiency. He goes there at
his own risk, and enjoys the license subject to its concomi-
tant perils, and no duty is imposed by law on the owner
or occupant to keep his premises in a suitable condition for
those who come there or use them solely for their own con-

venience or pleasure. He must use the premises in the condition in which he finds them. *Vanderbeck v. Hendry*, 34 N. J. Law, 472; *Gallagher v. Humphrey*, 6 Law T. (N. S.), 684; *Ivay v. Hedges*, 9 Q. B. Div. 80; *Reardon v. Thompson*, 149 Mass. 267. As to a licensee, so long as there is no active misconduct towards him, no liability is incurred by the occupier of the premises by reason of injury sustained by a visitor thereon. *Sweeny v. O. C. & N. R. Co.* 10 Allen, 368. If the presence of the plaintiff on the platform had any necessary or proper connection with any business or traffic she had or designed to have with the company, or she was an intending passenger on a train about to depart, then an invitation would no doubt be implied on the part of the company for her to come upon and use the platform for such purposes, and a consequent duty devolved on it to use due care to have the platform reasonably safe, both as to access, use, and departure from it. This view is not only a reasonable one, but is sustained by numerous adjudications. Smith, Neg. 59, 60, and cases cited; *Heaven v. Pender*, 9 Q. B. Div. 302, 305; *Indermaur v. Dames*, L. R. 2 C. P. 311; *Smith v. L. & St. K. Docks Co.* L. R. 3 C. P. 326. And we think it equally well settled that, where an intending passenger is about to take a train in the course of regular passenger traffic, the implied invitation extends also to those who go upon the platform to see him off, and as well to those who go there to meet a friend expected to arrive. In *Watkins v. G. W. R. Co.* 46 L. J. C. P. 817, 821, DENMAN, J., said: "I regard the passenger's friend so permitted to go along . . . as not being in the nature of a person barely licensed to be there, but as being invited to the same extent as the passenger he accompanies, and who is there on lawful business in which the passenger and the company have both an interest." And many cases in this country sustain the same view. *Tobin v. P., S. & P. R. Co.* 59 Me. 183; *Hamilton v. T. & P. R. Co.* 64 Tex.

251; *McKone v. M. C. R. Co.* 51 Mich. 601; *Atchison, T. & S. F. R. Co. v. Johns,* 36 Kan. 769; *Toledo, W. & W. R. Co. v. Grush,* 67 Ill. 263; *Central R. & B. Co. v. Smith,* 80 Ga. 526.

The duty of railroad companies to maintain sufficient and proper platforms for the use and accommodation of passengers, and to properly light them, is fully set forth in *Patten v. C. & N. W. R. Co.* 32 Wis. 524. No duty will arise on the part of the company in guarding or lighting its platform as to a particular person, unless there has been an implied invitation on its part, at least, for him to enter in respect to some matter of common interest between them, or in which the party is in some proper way connected. There is no universal rule applicable alike to all cases, and the difficulty of determining whether a mere license or an invitation to enter and use the platform will be implied has been found, in the practical application of these rules of liability, to be very embarrassing. All the cases cited, or which have come under our observation, are those where an invitation has been implied in favor of one or more friends of an intending or arriving passenger, between whom and the company the relation of carrier and passenger existed in the course of regular passenger traffic; and the implication of invitation and consequent duty to those who go to welcome the coming and speed the parting guest seems to be founded on the amenities and social observances which are an inseparable concomitant of modern railway passenger traffic and travel. We think that the rule is limited to the usages in which it had its origin. We do not think any such invitation or implication of duty arises, in a matter relating to freight traffic, as to one having no interest in or duty to perform in relation to the matter in hand, and that it ought not to be so extended without some strong reason for it.

Negligence consists in the violation of some *duty,* having

regard to the relation between the parties, to time, place, and circumstances; and whether a *duty* arises that may be violated or neglected, there being, as here, no dispute as to the facts, is a question of law to be determined by the court. As was said in *Cahill v. Layton*, 57 Wis. 614: "It is true that fault and negligence in keeping and maintaining the platform is alleged; but in the language of WILLES, J., in *Gautret v. Egerton*, L. R. 2 C. P. 375, 'to bring the case within the category of actionable negligence some wrongful act must be shown, or a breach of some positive duty. . . . It is not enough to show that the defendant has been guilty of negligence, without showing in what respect he was negligent, and *how he became bound* to use care to prevent injury to others.'" And so in *Cole v. McKey*, 66 Wis. 510: "To constitute actionable negligence, the defendant must be guilty of some wrongful act or breach of positive *duty to the plaintiff*." The duty of the company in such a case is *relative*, and not *absolute;* and this is well illustrated in *Griswold v. C. & N. W. R. Co.* 64 Wis. 657; *Gillis v. Penn. R. Co.* 59 Pa. St. 143; and *Baltimore & O. R. Co. v. Schwindling*, 101 Pa. St. 261. A railway company has a right to expect that an arriving passenger or an intending one may be met or accompanied by friends, and so it may be said that, in virtue of the relation between the passenger and the company, there is an implied invitation in their case, and that it owes them a corresponding duty. Not so, however, in the exceptional case, in freight traffic, where ladies, or others even, attend one who is about to leave in a freight car, riding in charge of live stock,— one who cannot be said to be a passenger except in a very limited and restricted sense. Such cars, in the usual course of business, have no business to transact at platforms, save as the one in charge of stock may enter across it to go to the office, and the company is not expected to provide a platform and have it, or the steps lead-

ing to it, protected by rails or lights at stock chutes, for the use of such so-called passengers or those who may come to see them off. The court must take notice of the general methods of transacting such business, and of matters of common knowledge. To hold that the company owes such duties in these exceptional cases, where, from motives of mere curiosity or of friendship, or even of affection, persons come to see off one in charge of live stock, would unduly burden and embarrass the freight traffic of the company, and establish a rule which has not heretofore been supposed to obtain. Lights are not maintained in or about such places as upon passenger platforms, and railings around them would be a great hindrance, and on the sides of a few steps or stairs unusual or unnecessary.

The facts and circumstances in this case were not such as to give rise to any implied invitation to the plaintiff to come or be on the platform on the evening in question, and wholly fail, in our judgment, to show that the company owed her any duty except that of a mere licensee, to come or go as others might, with the attendant risk. It is material to note the undisputed facts. This station was one where but little business was transacted, and but two shipments of stock had been made by the train in question within two years. The plaintiff was familiar with the platform, and had been upon it often as a passenger, both going and coming, and knew all about the steps, and had been up and down them a dozen times. The high platform in question was never lighted except when excursion trains were run to the fair, etc. Evidently she and her husband understood this, for they and their party brought lanterns with them. The plaintiff brought her lantern, and there were at least three lanterns at one time there, and at no time less than two. Such lights as these are the ones used in and around freight trains and stations, and in loading stock cars. The company was not bound to allow the

plaintiff's husband to load his horses from the high plat-
form, nor to embark or take the train from that point, any
more than, in the case of an arriving train, it would be
bound to allow him to disembark or get off there.    In
*Hemmingway v. C., M. & St. P. R. Co.* 67 Wis. 676, it was
said: "If the company carries passengers upon its freight
trains, we are aware of no rule of law which makes it the
duty of the company to give such passengers an opportu-
nity to disembark on the depot platform.    In many, perhaps
in most, cases this would be impracticable; and it is com-
mon knowledge that it is not usually done.    The company
fulfils all its legal requirements if it affords such passengers
sufficient opportunity to leave the train at a reasonably safe
and convenient place upon the depot grounds of the station,
although not at the depot or platform."

The plaintiff's rights, whatever they were in this case,
were no greater than those of her husband, in privity with
whom she derived them.    The plaintiff's husband had so-
licited the privilege of loading the horses into the car at
the high platform, undoubtedly so as to have it coupled in
from that point.    This privilege was granted him, for
otherwise the horses would have been loaded in, and the
car would have started from, the stockyard, some distance
west of the depot.    Neither the plaintiff nor her husband
was in any just sense invited to the platform, so as to de-
volve on the company any duty in respect to the plaintiff's
presence there.    They were licensees; certainly so as to
the plaintiff.    Conceding that her husband was invited, in
a legal sense, to the office to sign the contract, the plaintiff
had no duty to perform and no interest to care for in that
respect.    In no fair or legal sense can it be said that the
plaintiff was invited there by the defendant.    Whatever
right she had was as a mere licensee, and the company did
not owe her any duty except in that capacity.    When the
horses had been put in the car, and the freight contract

signed, the agent gave over to the plaintiff's husband and his party, consisting in all of some seven persons, the entire control of the depot, requesting them, when they left, to put out the lights in the waiting room and close the door. While they occupied the waiting room until the train came, not by virtue of any implied invitation arising out of the business in hand, but by the permission or license to load the horses and have the car start from the high platform instead of the stockyards, the party took, in addition to the knowledge of the situation, the risks and dangers incident to it. They had the lights ordinarily used in such business to avoid danger or injury, and, had a reasonably prudent use been made of the means at hand, there is no reason to suppose that the plaintiff would have suffered any injury. The reason for not doing so is that she did not think of it. It was her duty to think of it, and not the duty of the company. We think that upon the whole case it may be properly said the plaintiff has wholly failed to show the breach by the defendant of any duty it owed to her. For these reasons we think that the verdict should have been set aside, and a new trial granted.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.