## CITY OF BEAUMONT v. DOUGHERTY.
### (No. 1097—5004.)

Commission of Appeals of Texas, Section B. Oct. 24, 1928.

J. B. Morris and F. M. Sheffield, both of Beaumont, for plaintiff in error.

Conley, Renfro & Keen, of Beaumont, for defendant in error.

CRITZ, J. This suit was originally filed in the district court of Jefferson county, Texas, by John Dougherty, defendant in error, against the city of Beaumont, plaintiff in error, for damages on account of personal injuries alleged to have been received by him by falling into an open hole, or pit, in a wharf owned by the city of Beaumont. Trial in the district court, on special issues, resulted in a verdict and judgment for Dougherty. The case was appealed by the city to the Court of Civil Appeals, which court in part affirmed the judgment of the district court and in part reversed and remanded same. 298 S. W. 631. The case is now before this court on writ of error granted on application of the city.

The defendant in error, who was the plaintiff in the district court, will be designated herein as plaintiff, and the city of Beaumont as the city. The Court of Civil Appeals has made findings of fact on the salient questions involved in this appeal, which said findings are as follows:

"Appellant owns and operates a wharf and dock system on the banks of the Neches river within its corporate limits, which is served by a railroad running along the edge of the wharf, also owned by appellant. On the 9th of January, 1926, the date of appellee's injury, John Jacobson was constructing unit No. 1 of this system under a written contract with appellant which by its conditions made him an independent contractor. This contract provided that extra work might be covered by its terms, and under this clause Jacobson undertook to do certain repair work on unit No. 6 further down the river, that had been constructed at least three years prior to that date. In doing this work, Jacobson's servants used a hole in the wharf between the tracks of the railroad and about 40 or 50 feet long. This hole was the width of the railroad track. Originally this hole had been opened about three years before the date mentioned, but had been coverd up about four or six weeks before January 9th, and, before Jacobson went on the job, appellant, through its engineering department, reopened the hole for the purpose of making certain repairs, and left it in that condition. Finding the hole open, Jacobson's servants used it in making repairs on the wharf immediately under the hole. It would have taken an hour or two to cover the hole, thereby rendering it safe for pedestrians.

It could, also, have been protected by a guard rail, light, or watchman, but that was not done. December 14th or 15th was the last time Jacobson's men used this hole. Though the work was being done by Jacobson's servants, appellant's engineering department had general supervision, directing how it was to be done, and there was no evidence that the exclusive possession of unit No. 6 was delivered by appellant to Jacobson. Under the evidence, appellant had the right to close the hole at any time, or take any other necessary step to protect those using the wharf from the danger created by leaving the hole open. Appellant offered no excuse for not closing the hole after Jacobson's servants ceased using it. During the time mentioned, unit No. 6 was not in public service, and on the 9th day of January was in an incompleted condition, and the work being done by Jacobson had not been accepted by appellant.

"On the 9th day of January, the steamship West Ekonk was anchored at the city wharves for the purpose of loading. To expedite this work, the shipping agent furnishing the cargo for this ship asked and secured permission of the harbor master, an employee of appellant, to move his ship to unit No. 6. This was accomplished in the afternoon of that day. The shipping agent knew that unit No. 6 had not been opened to the public, that it was in an unfinished condition, and that the work being done by Jacobson had not been accepted by the city. Though unit No. 6 was in this incompleted condition, the West Ekonk used it, and appellant collected its regular wharf charges for this service. On the night of the 9th of January, appellee, a sailor on the West Ekonk, left his ship to go up town, and in walking along the wharf fell into the hole above described, and received the injuries for which he sued herein. We take the following statement of his testimony from appellant's brief:

"'I was notified by the chief engineer about 1 o'clock Saturday afternoon that I was going to be put below. He said it might be necessary to go at 12 that night. That was Saturday night that I was to stand my first watch below. I did not go on that watch; I didn't get a chance. I told the chief after we tied up around a quarter of 6 that I had to go to town to get a flash light battery for my light. I had a flash light, but the battery was bad, and we didn't have any on the ship. When the crew that belonged to the Mississippi Steamship Company left they took all the batteries and everything away, so I had to go and get a battery up town. I did not know that hole was there in the wharf at the time I fell into it. I did not know the condition of the wharf. I was walking along there carefully. I asked the watchman—I don't know his name—the Shipping Board watchman, I met him and asked him what was the nearest and best way to town, and he said, "Do you see that watchman standing amidship right at the gang plank, right at the gang way?" He said the best way to town is to go right up the docks until you see a light over on the left, or rather on the right as you go down the docks, and when you get to that light turn and go over to it and follow that Main street on to town. At the time I fell into that hole I was traveling that way.'"

The findings of the Court of Civil Appeals, which are well supported by the evidence, are to the effect that wharf No. 6, which was owned by the city of Beaumont, was not in the exclusive possession of an independent contractor. This finding is supported by the evidence, and is binding on this court, and eliminates the assignments bearing on this issue.

There is therefore but one question remaining for us to decide, which, under the findings of the Court of Civil Appeals and the undisputed record, becomes a question of law, and that is whether the plaintiff was an invitee or mere licensee on the wharf in question. If he was an invitee, it was the duty of the city to maintain the wharf in a reasonably safe condition. 20 R. C. L. p. 55, par. 51.

Under the facts recited in this opinion, the Supreme Court itself, after a conference with the Commission, is of the opinion that, inasmuch as said wharf No. 6 was not in the exclusive control of an independent contractor, but the city at the time of the docking of the ship, and at the time of the injuries complained of, exercised supervision over and control of said wharf, and, inasmuch as the city, acting through its duly authorized agent, the harbor master, granted permission for the docking of said ship at said wharf, and collected wharfage for its cargo, that, as a matter of law, said ship was an invitee and not a mere licensee. 29 Cyc. pp. 451 to 458.

It therefore follows that, since the ship was an invitee, the plaintiff, who was a sailor and an employee of the ship, and was there by virtue of being such sailor and employee, was also an invitee, and had, under the circumstances of this case, to say the least, as great rights as the ship. Dowd v. Chicago, M. St. P. Ry. Co., 84 Wis. 105, 54 N. W. 24, 20 L. R. A. 527, 36 Am. St. Rep. 917; Hicks v. G. C. & S. F. Ry. Co. (Tex. Civ. App.) 212 S. W. 840.

The case was fully and fairly submitted to the jury on the theory of plaintiff in the trial court, defendant in error here, being an invitee, and the jury returned a verdict on special issues, which entitled him to the judgment rendered.

We have thoroughly considered the other assignments, and in our opinion the Court of Civil Appeals has correctly disposed of them, and no good purpose would be served by our writing further thereon.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.