Peake vs. Buell.

PEAKE, Administrator, Respondent, vs. BUELL, Appellant.

*May 23 — June 20, 1895.*

*Negligence: Unguarded window opening into elevator shaft: Pleading: Conclusions of law.*

1. A complaint alleging that plaintiff's intestate, a plasterer, visited one of the upper floors in defendant's building upon his invitation for the purpose of making a bid on plastering certain unfinished rooms, and was struck and killed by an elevator, operated by defendant's tenants, while looking through an unguarded open window, four feet above the floor, opening from the hallway through which he was passing into the elevator shaft, which had the appearance of an unoccupied room, is *held* not to state a cause of action. The invitation to pass through the hallway to inspect the rooms to be plastered did not include any invitation or license to the deceased to thrust his head through the window into the elevator shaft.

2. Allegations in the complaint that it was defendant's duty to erect and maintain guards, etc., over such window, and that he neglected such duty by allowing the window to remain open and unguarded, are *held* to be the pleader's conclusions of law from the facts stated, and not to be admitted by a general demurrer.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

The complaint alleges, in effect, that the defendant, September 7, 1893, owned the five-story brick store building, with basement, therein described, which was newly built; that the same was then occupied and used as a wholesale

Peake vs. Buell.

and retail furniture store, salesroom, and warehouse by tenants of the defendant; that some parts thereof remained unfinished and unplastered; that on September 7, 1893, the deceased was a plasterer and a stone mason by trade; that on that day the deceased, together with this plaintiff, who were members of the same firm, met the defendant, and entered into conversation with him about plastering on the third and fourth floors of said building; that the defendant stated that the rooms on the third and fourth floors were then unplastered, and that he had a job of plastering. there to be done; that he then and there invited the deceased and this plaintiff to go with him into said store building, and look at and examine said job of plastering to be done therein, and to make a bid thereon; that the deceased, in company with the defendant and this plaintiff, proceeded up several flights of stairs in said building, until they reached an open space or landing at the head of said stairs on said fourth floor; that said place of landing is about eight feet square, with a door at the right-hand side as you go forward, opening into a large storeroom on said fourth floor, and that there is a narrow corridor leading back from said space or landing on said right-hand side a distance of about twenty feet to a second door, which also opens into said storeroom on said fourth floor; that in the east wall surrounding said space or landing, and directly in front of and before the stairway, there is a large window, composed of an upper and lower sash, each sash containing a single pane of glass thirty-six inches square in size, said sash being hung on pulleys, and weighted, and being easily raised or lowered, said sash being in all six and one-half feet in height by three and one-half feet in width; that the lower sill of said window is about four feet above the level of the floor of said space or landing; that said window opens into a large elevator shaft, in which there was in use and running at the time a large freight elevator, constructed and placed therein

by the defendant; that said elevator shaft is six and one-half by eight and one-half feet in dimensions, and is well lighted, having windows opening into it from the outside on the rear of said building, and also, in addition thereto, receiving light through the wire doors opening into said elevator from the several floors through which it passes, on all of which said floors there is good and sufficient light; that said elevator shaft, looking through said window, has the appearance of a large unoccupied room within; that September 7, 1893, said deceased, following after the defendant and this plaintiff to the space or landing at the head of the stairs on the fourth floor, and going and being there for the purpose of examining said building and storerooms therein for the purpose of making estimates and bids upon said job of plastering therein, as aforesaid, without knowledge that the room appearing within through said open window was a portion of said elevator shaft, said window being then and there open and the lower sash raised to a sufficient height, looked through said opening; that at that time, and then and there, the said freight elevator in said elevator shaft was being operated by the defendant's tenants, and was then and there descending from the fifth floor above, and, without noise or warning of any kind whatever, descended upon and struck the said deceased upon the head, injuring, crushing, mangling, maiming, and bruising said deceased, and catching and holding him fast between the under side of the floor of said elevator and the lower sill of said window; that it was the duty of the defendant to erect, put up, and maintain in and about said elevator shaft, and in the place where said window was located, and the opening therein, good and sufficient guards, locks, bolts, bars, defenses, and protection over and above said window and the opening caused thereby into said elevator shaft, and to keep the same closed and properly barred and guarded, and to give notice by proper signs and marks and otherwise of

Peake vs. Buell.

the location of said elevator shaft and the freight elevator in use therein; that disregarding said duty, and by the wrongful acts, neglect, and default of the defendant, his agents and servants, in failing to so guard said opening, the deceased was maimed, bruised, and injured as aforesaid; that said deceased was at the time thirty-nine years of age, in good health and in full strength and vigor, and earning $4 per day, and had a one-third interest in said firm, amounting to $300 per month; that said deceased died, by reason of said injuries, September 7, 1893, leaving, him surviving, his widow, who was entirely dependent upon him for support; that March 27, 1894, this plaintiff was appointed sole administrator of the estate of said deceased, and he has since qualified as such and entered upon the discharge of his duties.   Wherefore judgment is demanded.

To that complaint the defendant demurred on the ground that it does not state facts sufficient to constitute a cause of action.   From an order overruling that demurrer the defendant appeals.

*Geo. E. Sutherland,* for the appellant, argued, among other things, that the existence of a large window opening into an unusually well-lighted small elevator shaft was not at all akin to a trap door or pit-fall, which always implies an opening not clearly discernible or readily seen.   A private owner who invites others upon his grounds or premises is liable only in case of hidden defects or pit-falls, and where the danger is known or ought to have been anticipated by the proprietor. *Heath v. Metropolitan E. Co.* 58 Hun, 604; *Eisenberg v. M. P. R. Co.* 33 Mo. App. 85; *Spengeman v. Alter,* 7 Misc. (N. Y.), 61; *Hart v. Grennell,* 122 N. Y. 371, 375. An owner owes a licensee no duty as to the condition of his premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or wilfully cause him harm; while to one invited he is under obligation for *reasonable security for the purposes of the invitation. Beeh-*

Peake vs. Buell.

*ler v. Daniels,* 29 Atl. Rep. 6, 7; *Learoyd v. Godfrey,* 138 Mass. 315; *Gordon v. Cummings,* 152 id. 513; *Engel v. Smith,* 82 Mich. 1; *Bennett v. Railroad Co.* 102 U. S. 577; *Walker v. Winstanley,* 155 Mass. 301. The distinction which is clear and which applies to this case is that the decedent was not invited upon defendant's premises to inspect the elevator or the elevator shaft. He had nothing whatever to do with it; he was invited to look at the rooms which needed plastering. For application of the foregoing principles, see *Severy v. Nickerson,* 120 Mass. 306, 307; *Metcalfe v. Cunard S. Co.* 147 id. 66; *Heinlein v. B. & P. R. Co.* id. 136; *Hector v. Boston E. L. Co.* 161 id. 558; *Hart v. Grennell,* 122 N. Y. 371; *Gaffney v. Brown,* 150 Mass. 479; *Johnson v. Ramberg,* 49 Minn. 341; *Ten Broeck v. Wells, Fargo & Co.* 47 Fed. Rep. 690; *Canavan v. Stuyvesant,* 7 Misc. (N. Y.), 113; *Larkin v. O'Neill,* 119 N. Y. 221; *Gibson v. Leonard,* 143 Ill. 182; *Reardon v. Thompson,* 149 Mass. 267; *Matthews v. Bensel,* 51 N. J. Law, 30; *Parker v. Portland Pub. Co.* 69 Me. 173; *Indiana, B. & W. R. Co. v. Barnhart,* 115 Ind. 399; *Bedell v. Berkey,* 76 Mich. 435. The deceased was guilty of contributory negligence. *Johnson v. Ramberg,* 49 Minn. 341; *Bigelow v. West End St. R. Co.* 161 Mass. 393; *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136, 141; *Pittsburg & C. R. Co. v. McClurg,* 56 Pa. St. 294; *Dun v. S. & R. R. Co.* 78 Va. 645; *Indianapolis & C. R. Co. v. Rutherford,* 29 Ind. 82; *Louisville & N. R. Co. v. Sickings,* 5 Bush, 1; *Pittsburg & C. R. Co. v. Andrews,* 39 Md. 329; *Spencer v. M. & P. du C. R. Co.* 17 Wis. 487, 494; Beach, Contrib. Neg. § 155; *Federal St. & P. V. R. Co. v. Gibson,* 96 Pa. St. 83; *Hutchins v. Priestly E. W. & S. Co.* 61 Mich. 252.

For the respondent there was a brief by *Kelly & Kelly,* and oral argument by *John T. Kelly.* They contended, *inter alia,* that no suspicion or suggestion of the existence of an elevator shaft was brought to the notice of the deceased. Here was this window looking into the elevator shaft, which

Peake vs. Buell.

had the appearance of an unfinished room. To a man coming there as deceased had come, expecting to find one or more such rooms, what he saw must have confirmed a logical and natural conclusion of any mind, that this was one of the rooms, and while waiting for the door to open the most natural thing for him to do was to look into it. It was the duty of the defendant to keep this window safely closed or to provide guards. *Beck v. Carter*, 68 N. Y. 283; *Gibson, P. & Co. v. Sziepienski*, 37 Ill. App. 60; *People's Bank v. Morgolofski*, 75 Md. 432; *Hotel Asso. v. Walter*, 23 Neb. 280; *Corby v. Hill*, 93 Eng. C. L. 556; *Low v. G. T. R. Co.* 72 Me. 313; *Cahill v. Layton*, 57 Wis. 600; *Davis v. C. & N. W. R. Co.* 58 id. 646; *Bright v. B. & R. Co.* 88 id. 299; *Brezee v. Powers*, 80 Mich. 172; *Engel v. Smith*, 82 id. 1; *Anderson v. Kryter*, 9 Cent. L. J. 385; *Gordon v. Cummings*, 152 Mass. 513; *McRickard v. Flint*, 114 N. Y. 222; *Tousey v. Roberts*, id. 312; *Davis v. Cent. C. Soc.* 129 Mass. 367. If there could possibly be any question as to whether or not the deceased had turned aside from the object of his visit and thereby become a trespasser, that fact must be determined by the jury. *Gilbert v. Nagle*, 118 Mass. 278.

CASSODAY, J. The portions of the complaint alleging, in effect, that it was the duty of the defendant to erect, put up, and maintain guards, locks, bolts, bars, defenses, and protection over and above the window mentioned and the opening into the elevator shaft thereby caused, and that he disregarded and neglected such duty by allowing the window to remain open and unguarded, must be regarded as the pleader's conclusions of law from the facts therein alleged. While a general demurrer is an admission of all facts stated in the pleading demurred to, yet it does not admit such mere conclusions of law. *Pratt v. Lincoln Co.* 61 Wis. 62, and cases there cited.

Counsel for the plaintiff is undoubtedly correct in contend-

ing that "where the owner of land, expressly or by implica-
tion, invites others to come upon his land, if he permits
anything in the nature of a snare to exist thereon, which
results in injury to one availing himself of the invitation
and who at the time is exercising ordinary care, such owner
is answerable for the consequences." *Beck v. Carter*, 68
N. Y. 283. Counsel has cited numerous other cases to the
same effect, notably *Elliott v. Pray*, 10 Allen, 378, where
there was a trap door negligently left open on the way lead-
ing to a stairway; and *Parker v. Portland Pub. Co.* 69 Me.
173, *S. C.* 9 Cent. L. J. 108, where the door leading from a
dark room into an elevator shaft had been left open after
business hours; and, although the judgment against the de-
fendants was reversed for error, yet it was held, in effect,
that defendants were bound to use ordinary care in keep-
ing the premises and the usual passageway to them safe for
the access of all persons exercising ordinary care in coming
to them *at seasonable hours* by their invitation, express or
implied, or for any purpose beneficial to them. If, instead
of the window in question, there had been a door leading
from the hallway into the elevator shaft, and that door had
been left open, and the deceased, while in the exercise of or-
dinary care, had, by some inadvertence, stepped into the
elevator shaft and been injured, then we would have had
the question presented which was involved in some of the
cases relied upon. Here the lower sill of the window in
question was about four feet above the level of the floor in
the hallway where the deceased stood when he put his head
through the window. Had he kept wholly within the walls
of the hallway, he would have remained free from danger.
True, he was invited by the defendant to inspect certain un-
finished rooms beyond the hallway, with the view of con-
tracting to do certain labor therein. Of course, the invita-
tion included an invitation to pass through the hallway in
question, on his way to such rooms; but such invitation to

the hallway was necessarily limited by the wall between the elevator shaft and the hallway. It included no express or implied invitation to thrust his head or his hands through the window into the elevator shaft. He could only do that by intending to do so, not by mere inadvertence or neglect. The opening through the window was sufficiently high to prevent injury to those merely using the hallway as a passageway. Injury could only be inflicted by the voluntary exposure of some part of the person through the opening. It may be, as contended, that the moving elevator which inflicted the injury was out of sight, and hence that the danger was concealed from those inside the hallway. Nevertheless, it was a danger outside of the hallway into which the deceased had been invited. The invitation to the hallway gave him no license to protrude himself through the window. The elevator was operated by the defendant's tenants, and not by him. The defendant owed the deceased no duty in respect to the operation of the elevator. To constitute actionable negligence, the defendant must be guilty of some wrongful act or breach of positive *duty to the plaintiff*. *Griswold v. C. & N. W. R. Co.* 64 Wis. 652; *Cole v. McKey*, 66 Wis. 510; *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 116; *Goff v. C. R. & M. R. Co.* 86 Wis. 245. After careful consideration, we are forced to hold that the complaint fails to state facts constituting such wrongful act or breach of duty.

*By the Court.*— The order of the superior court of Milwaukee county is reversed, and the cause is remanded for further proceedings according to law.