McGINN, Respondent, vs. FRENCH, Administrator, Appellant.

*April 27 — May 15, 1900.*

*Appeal: Review of evidence: Agency: Landlord and tenant: Agreement to repair: Negligence: Contributory negligence: Verdict.*

1. Where the record shows that at the close of the testimony a motion was made to direct a verdict, which was denied and an exception duly taken, the testimony will be reviewed on appeal in order to determine whether the motion should have been granted, although no motion for a new trial was made.

2. Where a married woman made a lease of certain premises for and on behalf of her husband, she cannot maintain an action to recover for injuries caused by defective steps, based on the existence of a contract relation between herself and the landlord whereby

McGinn vs. French.

he agreed to repair the steps and his failure to perform such agreement: her action to recover for such injuries must be sustained, if at all, as an action for negligence.

3. Where a tenant knew that the stairway in such case was out of repair and dangerous, and that it could be repaired at a trifling expense, but, before being injured thereon, continued to use it for more than a year without repairing it, and neglected to insist on the alleged promise of the landlord to make the repairs, such continued use was at the tenant's risk, and hence relieved the landlord from liability to respond in damages for the accident.

APPEAL from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Reversed.*

On April 7, 1896, the plaintiff, acting for her husband, leased of defendant the lower flat of a building owned by him for a term of month to month. At the rear of the building was a narrow platform, with four or five steps leading to the ground, which it is claimed the defendant agreed to replace by a new one. The plaintiff, with her husband, moved in immediately, and continued to occupy the premises and use the platform and stairway until September, 1897. On the evening of August 24, 1897, while descending the stairs, the plaintiff was injured by one of the stairs giving way. The evidence as to the exact nature of the defect is somewhat indefinite. The stairway was about two feet wide, and was made of two 'stringers, one of which was nailed to the side of the house. The plaintiff thus describes the situation: "The step gave way towards the side of the house, on the outside where it was fastened, nearest the house. This outside looked as though it broke right off, but that toward the house was all loose. The tread of the step upon which I placed my foot tipped right in on the side toward the house, and it turned over." Again: "It was split right back from here, right down to there [indicating]. The step setting on there fell right over, so that I found the grain of the wood had been split down, right through, so as to carry this projection right away." The con-

clusion from all the testimony is that the step was loose from the stringer on the side toward the house, and that that part of the outside stringer upon which the step rested was broken off, the break being new. The stairs were repaired the next day by the plaintiff's husband by the use of a few nails, and they continued to use them until they vacated the premises. Whatever the defect was, the plaintiff knew of it when she moved in. The stairs were used daily, with knowledge of the defect, up to the day of the accident. The jury found that the steps were in a defective and dangerous condition at the time the house was rented, and so continued up to the day of the accident, and that plaintiff knew of such defective and dangers condition from the time she rented the house. A number of other questions were included in the special verdict, which are not considered important in this litigation. A motion to direct a verdict for defendant was denied, and an exception duly taken. Judgment was entered for plaintiff for $2,100 damages and costs, from which the defendant has appealed.

For the appellant there was a brief by *G. W. Hazelton* and *Turner, Pease & Turner*, and oral argument by *W. J. Turner*.

*Edgar L. Wood*, for the respondent.

BARDEEN, J. No motion for a new trial was made, and the plaintiff argues that the court will not review the evidence. The record shows that at the close of the testimony the defendant made a motion to direct a verdict in his favor, which was denied and an exception duly taken. The rule in such cases is that the court will review the testimony, in order to determine whether the motion should have been granted. *Second Nat. Bank v. Larson*, 80 Wis. 469.

The plaintiff is a married woman, and made the lease of the premises in question for and on behalf of her husband; hence the agreement to repair or rebuild the stairway, if

any was made, was with her husband, and not with her. Such being the case, the effort made to sustain this action, because of a contract relation between the plaintiff and defendant must fail. The action, if sustainable at all,— a point we do not find it necessary to decide,— must be sustained as an action for negligence. Assuming, however, for the purposes of this action, that such an action can be maintained by the plaintiff, we will proceed to review the case.

The evidence and findings of the jury disclose this state of facts: At the time the premises were rented, in April, 1896, the steps of this stairway were unsafe and dangerous, and continued in that condition until the day of the accident, August 24, 1897. During all this time the plaintiff used the stairs daily, with full knowledge of such unsafe, dangerous, and defective condition. The evidence of the precise defect which caused the accident is quite indefinite, as preserved in the record. A fair inference from the plaintiff's testimony is that it was caused by the step being loose. The defendant claimed that it was caused by a wagon striking the outside stringer, and breaking or splitting off that portion which supported the step upon which the plaintiff fell. At any rate, the evidence was undisputed that this part of the stringer was broken off; that the break was new; the stringer bore the marks of a blow or some force applied to it; and that the plaintiff and her sister had used the stairway safely about three quarters of an hour before the accident. It is also an accepted fact that the plaintiff's husband repaired the stairs the next morning, or soon afterwards, by the use of a few nails, and continued to use them, without further repairs, so long as they lived there. The plaintiff testified that she saw the repairs made, and that they consisted in driving a few nails into the break and into the other side towards the house, and that it may have taken her husband five, ten, or fifteen minutes to do the job. Whatever the defect was, it is perfectly evident that a few min-

utes' work with a hammer and nails would have made the steps absolutely safe. If these steps were as unsafe, defective, and dangerous as the plaintiff would have us believe, it was little less than foolhardy for any one to attempt to use them. If they could be repaired, as they were, at so slight an expense and with so little effort, the continued use without such repair was an assumption of the risk of accident. Knowing these stairs were unsafe, the liability of danger great, and the expense of repairs trifling, it was the plain duty of the tenant to make them, and thus save his family from the threatened danger. *Cook v. Soule*, 56 N. Y. 420. It was but a matter of common prudence, and the tenant, knowing the danger of loss or injury to be great, cannot continue the use of the dangerous premises, and hide behind a promise to repair. See *Miller v. Mariner's Church*, 7 Me. 51; *Town v. Armstrong*, 75 Mich. 580; *Purcell v. English*, 86 Ind. 34. If it be admitted that there was a promise to repair in this case, the rule of law applicable to plaintiff's case is in no way different from the one applicable to the relation of master and servant. It is a rule designed for the benefit of employees engaged in work where the machinery used or the means employed are of a kind of which the user can have little knowledge, and does not apply to means or appliances of ordinary use, and with which they are entirely familiar. Bailey, Personal Injuries, § 3103. When the danger is open and menacing, continued use of the defective appliances is at the risk of the user. *Corcoran v. Milwaukee G. L. Co.* 81 Wis. 191; *Meador v. L. S. & M. S. R. Co.* 138 Ind. 290. In this latter case the servant was using a ladder, one of the steps of which was not nailed tight enough to the side. It could have been repaired by the use of a hammer, or any convenient stone or brick. The court denied a recovery, because the defect was obvious, could have been repaired with a slight effort, and by its continued use the servant assumed the risk of accidents.

So, in this case, it is shown that the alleged defect was open and visible, had been known to the plaintiff for more than a year, and that it could have been repaired at a trifling expense. Continued use with knowledge of the dangerous condition of the stairway was a clear assumption of the risk of accident, which was not relieved by the alleged promise to repair. Every reasonable probability of the case, however, supports the defendant's contention as to the cause of the accident. The fact that the stairway had been used in safety but a short time before the accident, the mark of the wagon on the side of the outside stringer, and the freshness of the break, the fact that the driveway next to the stairs was in frequent use by teams, all tend to show that the break was caused by some wagon being forcibly run against the stringer. If such were the case, there would be no obligation upon defendant to respond in damages for the accident. The jury having adopted the plaintiff's theory of the accident, the case must go upon that basis. It is therefore considered that the evidence conclusively shows that plaintiff assumed the risk of injury by the continued use of the stairway under the circumstances in proof, and the court ought to have directed a verdict for defendant.

*By the Court.*— The judgment of the superior court is reversed, and the cause is remanded for a new trial.