Moroder, Appellant, vs. Fox, Respondent.

*October 31, 1913—February 3, 1914.*

*Landlord and tenant: Lease construed: Negligence: Bursting of water pipes: Liability of lessor.*

1. Plaintiff rented from defendant the first floor and part of the basement of a three-story building under a lease which, in the printed part thereof, required him "to take and use all necessary precautions to prevent damages to any of the water pipes

and water works upon said premises, or to any part of said demised premises, by frost or otherwise, and to pay all damages done to said premises by reason of bursting of water pipes, and to turn and let the water out of the pipes in said premises whenever it shall be necessary to do so, to prevent it from freezing or injuring said pipes and property." When the lease was made the second and third floors of the building were occupied as flats by other tenants, each of whom did his own heating. There was but one turn-off for the water, which was located in the basement, accessible to both plaintiff and defendant. Turning off the water there cut off the supply from all the tenants. *Held,* that the quoted provision was intended to make the lessee responsible only for the pipes in the portion of the premises leased by him; that the words "said premises" refer to the premises leased and not to the whole building in which they were situated.

2. The flat on the second floor afterwards became vacant and so remained for some time, in the possession of the defendant, who knew that it was not heated and that the water pipes running through it were unprotected. *Held,* that he was negligent in permitting the premises so to remain during the winter time, and became liable to plaintiff for damage to the goods of the latter on the first floor proximately caused by the freezing of the water and bursting of the pipes on the second floor.

TIMLIN and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

Action to recover damages sustained by reason of the bursting of water pipes above plaintiff's premises resulting in damage to goods contained therein. On the 18th day of June, 1911, the plaintiff leased from the defendant for a period of two years from May 1, 1911, the first floor and part of the basement of a three-story building situated in the city of Milwaukee. The printed portion of the lease contained this agreement on the part of the lessee:

"To take and use all necessary precautions to prevent damages to any of the water pipes and water works upon said premises, or to any part of said demised premises, by frost or otherwise, and to pay all damages done to said

premises by reason of bursting of water pipes, and to turn and let the water out of the pipes in said premises whenever it shall be necessary to do so, to prevent it from freezing or injuring said pipes and property."

Plaintiff occupied the first floor as a store and workshop and directly above it were two flats, one in the second and one in the third story, which at the time the lease was executed were occupied by other tenants of the defendant. At the time the damages were sustained only the third floor of said building was occupied as a flat. There was but one water meter and one set of water pipes for the use of the first floor and the two flats above, and the turn-off was located in the basement, so that if the water had been turned off there, the tenants on the other floors would have had their water supply shut off. In September the flat on the second floor was vacated, and remained so until the 5th day of January, 1912, when, owing to severe cold, the pipes in the second flat burst, large quantities of water escaped through the floor and ceiling of the premises occupied by the plaintiff and directly upon his stock of goods, a greater portion of which was water-soaked and damaged. At the time the pipes burst there was no heat in the second floor and the pipes were not protected from frost in any way.

The case was first tried in the civil court, and the judge thereof held the defendant liable and assessed plaintiff's damages in the sum of $250, and entered judgment accordingly. An appeal was taken to the circuit court, which resulted in a reversal of the judgment on the ground that plaintiff, by the provision of the lease quoted, had agreed to become responsible for any damage done by the freezing or bursting of the water pipes in question. From a judgment entered accordingly the plaintiff appealed.

For the appellant the cause was submitted on the brief of *Alexander & Burke.*

For the respondent there was a brief by *Houghton, Neelen & Houghton,* and oral argument by *Albert Houghton.*

The following opinion was filed November 18, 1913:

VINJE, J.   It appears that plaintiff rented the first story and part of the basement of a three-story building, and that at the time the lease was executed the second and third stories were used as flats.   His lease required him to "take and use all necessary precautions to prevent damages to any of the water pipes and water works upon said premises, or to any part of said demised premises, by frost or otherwise, and to pay all damages done to said premises by reason of bursting of said water pipes, and to turn and let the water out of the pipes in said premises whenever it shall be necessary to do so, to prevent it from freezing or injuring said pipes and property."   Do these provisions of the lease obligate the plaintiff to so care for the water pipes that they shall not burst in those portions of the building not leased or used by him?   The provisions are in the printed form of the lease, and we think it quite clear that they were intended to make the tenant responsible only for the pipes in the portion of the premises leased by him; that the words *said premises* refer to the premises leased, and not to the whole building in which they are situated.   In the instant case there was a flat in the second story, and one in the third story occupied by other tenants of the landlord.   It could not have been the intention of the parties that the plaintiff should become responsible for the water pipes in those two flats to which he had no access and over which he could exercise no control. True, there was but one shut-off for the store occupied by the plaintiff and the two flats, which was located in the basement and to which both the plaintiff and defendant had access. But plaintiff could not shut off the water for the second, or vacant, flat without at the same time shutting it off for the third flat, which was occupied.   The only way to prevent the pipes from freezing in the second flat was to heat it, or sufficiently wrap the pipes, as found by the civil court.

However, that is immaterial, since under the terms of the lease, as we construe it, he was chargeable with the condition of the water pipes only in the premises leased by him.

From the time the tenant of the flat on the second floor vacated the same in September up to and including the time the damage was done, the defendant was in possession of it, as was found by the civil court and as the fact was. Being in possession thereof, irrespective of the relation of landlord and tenant between the parties, it became his duty to exercise ordinary care to so use the same as not to injure plaintiff in the enjoyment of his premises. Knowing that the premises were vacant and unheated and. that the water pipes running through the same to supply the flat on the third story with water were uncovered and unprotected from frost, it was negligence to allow them so to remain during the winter time. For such negligence he became liable to plaintiff who sustained damage as a proximate result thereof. The case of *Priest v. Nichols,* 116 Mass. 401, is very much in point. The facts and ruling thereon are thus stated by the court:

"The plaintiffs occupied as tenants the lower floor of a building belonging to the defendants. The defendants occupied the floor above. There was a pipe leading through the plaintiffs' premises which conveyed the waste water and material from the manufactory, sinks and water closet of the defendants to the sewer below. This pipe was alleged to be in charge of the defendants, and evidence was offered that they had so treated it, and had, from time to time, upon notice, made repairs upon it. But they negligently suffered it to be out of repair, whereby the water damaged the goods of the plaintiffs. It was a question of fact for the jury, whether the pipe was in charge of the defendants, and was out of repair through their negligence. The rule that a landlord is not bound to keep the premises of his tenant in repair, and therefore cannot be held responsible for negligence, if out of repair, has no application to the facts presented in this case."

It was held that plaintiff was entitled to recover. In *Buckley v. Cunningham,* 103 Ala. 449, 15 South. 826, the contrary was held under somewhat similar facts. In the following cases recoveries have been had for the negligent escape of water by a tenant or owner causing damage to another tenant: *Warren v. Kauffman,* 2 Phila. 259; *Rosenfield v. Arrol,* 44 Minn. 395, 46 N. W. 768; *Killion v. Power,* 51 Pa. St. 429; *Curran v. Weiss,* 6 Misc. 138, 26 N. Y. Supp. 8; *Greco v. Bernheimer,* 17 Misc. 592, 40 N. Y. Supp. 677; *Simon-Reigel C. Co. v. Gordon-Burnham B. Co.* 20 Misc. 598, 46 N. Y. Supp. 416; *Miller v. Benoit,* 29 App. Div. 252, 51 N. Y. Supp. 368, affirmed in 164 N. Y. 590, 58 N. E. 1090; *Pike v. Brittan,* 71 Cal. 159, 11 Pac. 890; *Freidenburg & Co. v. Jones,* 63 Ga. 612. See, also, valuable note in 15 L. R. A. n. s. 545 *et seq.,* where most of these and other cases are collected. For additional cases, where it has been held that the landlord is liable to a tenant for the negligent use of part of the premises retained by him, see *Railton v. Taylor,* 20 R. I. 279, 38 Atl. 980; *Hysore v. Quigley,* 9 Houst. (Del.) 348, 32 Atl. 960; *Defiance W. Co. v. Olinger,* 54 Ohio St. 532, 44 N. E. 238; *Glickauf v. Maurer,* 75 Ill. 289; *Jackson v. Eddy,* 12 Mo. 209; *Stapenhorst v. American Mfg. Co.* 15 Abb. Pr. n. s. 355.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the judgment of the civil court.

The following opinion was filed November 21, 1913:

TIMLIN, J. (*dissenting*). The civil court of Milwaukee county held the lessor liable to the lessee for damages caused to the goods of the latter by a water pipe freezing and bursting in the vacant apartments next above those of the lessee. This liability was predicated upon negligence of the lessor. The circuit court upon appeal, apparently without investigating the question of negligence, reversed this judgment on

the ground that a covenant in the lease imposed upon the
lessee the duty to prevent this freezing. Neither the civil
court nor the circuit court passed upon the real questions in
the case, nor has this court done so in the majority opinion
whereby the judgment of the circuit court is reversed and
that of the civil court affirmed.

All will concede, I think, that if the lessor was guilty of
negligence which was the proximate cause of the lessee's
damage the lessor would be liable. Also that if the law im-
posed a duty upon the lessor to cover the water pipes in or
heat the vacant apartment and he failed in that duty, thus
causing damage to the lessee, he would be liable; although
on this latter proposition there is a distinction made and ob-
served in the law between acts of misfeasance on the part
of the lessor and mere nonfeasance on his part. In the lat-
ter case he would ordinarily not be liable. In this state it
seems well settled that there is no liability on the ground of
implied contract and that the lessor, if liable at all, must be
held liable on the ground of negligence. *McGinn v. French,*
107 Wis. 54, 57, 82 N. W. 724; *Kuhn v. Sol. Heavenrich Co.*
115 Wis. 447, 91 N. W. 994; *Fellows v. Gilhuber,* 82 Wis.
639, 52 N. W. 307. The rule is the same whether the whole
or only part of the premises is leased. *Fellows v. Gilhuber,*
*supra; Cole v. McKey,* 66 Wis. 500, 29 N. W. 279; *Dowling*
*v. Nuebling,* 97 Wis. 350, 72 N. W. 871. An exception to
this rule is found where the defect is a concealed one, known
to the landlord and not known to the tenant, and not discov-
erable by the tenant in the exercise of that degree of care
which the law demands of him. *Anderson v. Hayes,* 101
Wis. 538, 77 N. W. 891. The lessor is entitled to no im-
munity merely because he is lessor, and in all cases in which,
by law, he owes a duty to the lessee and negligently performs
or negligently omits to perform that duty, he will be liable
like other persons. Thus in the Georgia cases cited in the
majority opinion there was a statute imposing upon the land-

lord the duty to repair, although this statute is not expressly referred to. Georgia Code of 1868, sec. 2258; of 1883, sec. 2284; of 1895, sec. 3123; also Code of 1868, sec. 2949. Where there is no duty imposed by law there can be no breach of duty, and where there is no breach of duty there can be no actionable negligence. *Goff v. Chippewa River & M. R. Co.* 86 Wis. 237, 245, 56 N. W. 465; *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 105, 116, 54 N. W. 24; *Peake v. Buell,* 90 Wis. 508, 63 N. W. 1053.

"To constitute actionable negligence the defendant must be guilty of some wrongful act or breach of positive duty to the plaintiff." *Cole v. McKey, supra.* The facts are established by admissions in the pleadings and by the uncontroverted evidence. The findings of the civil court are not important, because they cannot be invoked in support of the judgment appealed from. But, aside from conclusions, they contain nothing in conflict with the uncontroverted facts. The case was before the circuit court for review upon these facts. The testimony is not contained in the printed case but is in the record and was before the learned circuit court. There is no material controversy upon the facts. The leased premises were "the first floor and part of basement of the three-story brick-veneered building No. 910 3rd street, in the 13th ward of the city of Milwaukee. Same to be used for manufacturing of church goods and retailing." There was a flat or apartment on the second floor and another on the third floor. Each tenant did his own heating. The basement and first floor were heated by a furnace fed and attended to by the plaintiff lessee; the second and third floors by stoves apparently furnished and fed by the lessees of these apartments. There was a water pipe running up from the basement through the first-floor and second-floor premises and supplying each of these and the third-floor tenant with water. The water closet mentioned in the lease was in the basement. The only place at which the water could be shut

off was in the basement and was accessible to all tenants, but the water could not be shut off from one tenant without shutting it off from all. The water pipes were everywhere in good condition, but not protected by any covering material. There is no evidence tending to show that the water pipe which burst was near a window or in any way unusually exposed. The tenants each claimed or held a separate part of the basement and potatoes and other vegetables and coal were kept there, but the shut-off was near the back stairway entrance and accessible to all. The plaintiff lessee had occupied the same premises at and before the time when the defendant became owner by purchase from Strauss, the former lessor of plaintiff. Upon the defendant's purchase the plaintiff surrendered the lease he had from Strauss, which had several months to run, and the lease in question was made by defendant to plaintiff for the same premises but at a reduced rental, and the plaintiff had from defendant the key to the second-floor apartment and other keys for the purpose of giving the keys to the prospective tenants who might call with a view to renting. The plaintiff lessee therefore knew the situation for a longer time than the lessor. He actually occupied the leased premises, while the lessor lived at some distance but in the same city. Both the lessor and lessee knew when the lease was made that the upper apartments were occupied. Both knew that the second floor became vacant sometime in the fall and continued vacant until after the damage occurred. Both knew it was cold weather during the first days of January, and both had access to the vacant apartments while they were so vacant. The plaintiff testifies that he did not know where the water shut-off was in the basement, but he agreed in the covenants of his lease to close it for some purposes, and the evidence is entirely silent with reference to the lessor having any knowledge that the tenant he found in the premises when he bought the property and who agreed to shut off the water for some purposes did

not know where the shut-off was. The evidence is entirely silent with reference to whether the lessee kept his premises heated during the cold spell or at what temperature he maintained the air in his first-floor store or room, and is also silent with reference to the knowledge of the lessor concerning the heat maintained by lessee with his furnace in the part of the building occupied by the lessee. But we must, I think, assume that both knew of the diffusion of heat, of the slow cooling of water, of the tendency of heated air and warm water to ascend, and the lessor, being absent, would probably have the right to presume that the lessee by means of the furnace maintained in his rooms a temperature of about seventy degrees Fahrenheit and the upper apartment something about the same. Both knew that the water could not be shut off in the basement from one tenant without shutting it off from the first, second, and third floors, and the lessee knew that in his manufacturing he had occasion to use water thirty times a day, for so he testifies. The water froze in the pipe near the sink in the second-floor apartment, but we do not know exactly when this happened. We do know that this caused the pipe to break and allowed the water to escape upon the second floor on January 3d or January 5th (it makes no difference which), and from thence came through the ceiling upon the goods of the lessee on the first floor and damaged them. The ceiling seems to have been one which would let water through but not heat. This must have been some days or hours after the water froze in the pipe and burst it, because ice does not break a pipe until it forms solid in it and the water escapes some time thereafter.

Now where is the negligence on the part of the lessor? It seems to be held that he must set up and keep fire in a stove in the vacant second-floor apartment in anticipation of the water freezing in the pipe, or that he must go further than to furnish a pipe in good repair and of good quality and put some kind of a frost-proof cover thereon; and not only this,

but he owed this duty to a tenant who, he had reason to believe, knew all about the physical condition, and much more than he did about the temperature of the house, and who had it in his power to shut off the water and to heat his own apartments and to investigate conditions and temperature in the vacant apartments. Whether or not there was likelihood of the water freezing in and bursting the pipe was largely a matter of judgment, depending upon the temperature of the rooms below and above, how long that temperature had been maintained, how cold it might become, and whether the pipes were emptied. He who lived at a distance could not be said to be careless in leaving these things to those in immediate contact with conditions as they existed, especially when he had in his lease the covenants hereinafter noticed. There was simply inaction, nonfeasance, on the part of the defendant and in a particular in which he owed no duty of diligence to the tenant unless such duty is imposed on him by a sort of judicial legislation. I think the case deserves the comment found in *Buckley v. Cunningham,* 103 Ala. 449, 15 South. 826:

"To declare as matter of law, growing out of the relationship of landlord and tenant, independent of contractual obligation, that the landlord owed a duty to his tenants, in anticipation of a freeze, to see, for the protection of his tenants, that the water was cut off from the pipes, when the facts show that the tenants have equal authority and privilege to shut the water off, or cause it to be shut off at their request, as the landlord, would be to lay down a rule of law, unwarranted by any just principle, or any precedent which we have discovered."

I have found no case amongst the numerous cases cited in the majority opinion which tends to uphold liability of the lessor under the circumstances of the instant case, but the discerning lawyer will find, I think, most of the cited cases make against such liability. This lease, like other written instruments, must be construed with reference to the known

physical condition of the property which is leased. It is quite a mistaken notion of law that we must look into this lease for some covenant on the part of the lessee to absolve the lessor from negligence. Negligence might exist or be absent independently of such covenant. We may consider the covenants of the lease in order to determine whether there was within contemplation of the parties thereunto any duty on the part of the lessor such as the majority opinion imposes upon him.

The lessee covenanted "to keep said premises, including the sewer, outhouse or water closet, sidewalk, street and gutter, clean, and observe all the ordinances of the city," etc. The premises here expressly include more than the demised portion of the building. Immediately following this and relating to it as the nearest antecedent is the covenant "to take and use all necessary precautions to prevent damages to any of the water pipes and water works upon said premises." This must be taken to mean the premises just said. This view is strengthened by the next following part of the sentence, which has no office or meaning unless it refers to something different: "or to any part of said demised premises." So that a fair reading of this covenant is that the lessee shall take and use all necessary precautions to prevent damage to any of the water pipes and water works upon said premises, including the sewer, outhouse, or water closet in the basement, and also to any part of the demised premises, by frost or otherwise, and to pay all damages done to said premises by reason of the bursting of said water pipes. This, as I understand it, casts the duty upon the lessee to protect and prevent damage to any and all water pipes or water works which are in the basement or in the first floor.

When we reflect that this shut-off was in the basement and accessible to the lessee and that necessary precautions must include shutting off the water when necessary, we have the duty cast upon the lessee of shutting off the water at least

for the purpose of preventing certain damage to the pipe "by frost or otherwise." This is made more clear by the following words: "And to turn and let the water out of the pipes in said premises whenever it shall be necessary to do so to prevent it from freezing or injuring said pipes or property." The parties must be held to have known that these pipes of the demised premises could not have been emptied of water or the water shut off without shutting off the water from all above. Therefore, so far as the lessor could grant and the lessee could undertake, the latter was authorized to shut off the water not only from his own premises but from those premises on the second and third floor above his. This removes the objection of lack of authority to do so on the part of the lessee. But its most important bearing is upon the question of the diligence of the lessor. The latter knows that the lessee has so undertaken and is also aware of the superior advantages of the lessee for determining when it might be prudent or necessary to shut off the water. Can it be said that under such circumstances there was contemplated by the parties to this lease any duty on the part of the lessor, living at a distance, to visit the place whenever there was prospect of a cold spell, ascertain the temperature of the lower rooms, estimate the probabilities of the water freezing in the pipes on the second floor, and shut the water off from all the tenants, including the plaintiff? I think not. Under such circumstances was there any duty resting upon the lessor to keep the vacant second-floor apartments heated? This would require putting in a stove, furnishing coal, and employing some one to keep up a fire. No known rule of diligence requires this. There was nothing to suggest the necessity of so doing in the instant case. I do not think it can be said there was any duty of diligence which called upon the lessor to visit the premises in order to ascertain the temperature or to keep a fire in the vacant apartments or to furnish frost-proof covering for the pipes. The

mode of preventing damages to the pipe in the premises of the lessee was provided for, that is to say, to shut off the water to prevent freezing, and it was not contemplated that any other mode of protection was necessary. It was apparent that the lessee would always be in a better position to determine the chances of freezing than the lessor, because that must always depend in great measure upon whether the water was flowing, upon the temperature of lessee's rooms below, and upon the probability of a fall in temperature, and it would require the lessor not only to foresee these things but to come a distance in order to perform a duty which the lessee, on the ground, in contact with the appliances in question and as well able to judge of the probabilities of a fall in temperature and better able to judge of its effect upon the pipes, undertook to do so far as the part demised to him was affected. The undisputed evidence shows it was not customary for lessors not residing in any part of the leased premises to do such things, and the rule that an ordinarily prudent person under like circumstances would have kept a fire in this vacant room or covered the pipe passing through such room with some frost-proof covering is wholly artificial, arbitrary, and unsound. *Buckley v. Cunningham*, 103 Ala. 449, 15 South. 826; *Taylor v. Bailey*, 74 Ill. 178; *McKeon v. Cutter*, 156 Mass. 296, 31 N. E. 389; *Cheeseborough v. Green*, 10 Conn. 318, 26 Am. Dec. 396; *Cole v. McKey*, 66 Wis. 500, 29 N. W. 279; *Peake v. Buell*, 90 Wis. 508, 63 N. W. 1053; *Fellows v. Gilhuber*, 82 Wis. 639, 52 N. W. 307; *Dowling v. Nuebling*, 97 Wis. 350, 72 N. W. 871. See, also, other cases cited in majority opinion.

Negligence cannot be inferred from the fact that the lessor did not put into the premises the latest or best known appliances. *Bernhard v. Reeves*, 6 Wash. 424, 33 Pac. 873.

Then upon the question of contributory negligence. It must be manifest, I think, from the foregoing *résumé* of the uncontroverted facts that it could not be held that the lessor

was negligent without at the same time and upon the same evidence convicting the lessee of contributory negligence. Indeed, the negligence of the lessee was much the greater of the two if we assume that there was negligence on the part of the lessor. The civil court seems to have got over this question of contributory negligence by finding that the covenants of the lease did not require the lessee to preserve that part of the continuous water pipe which extended in and through the second-floor apartment. This is not a question of negligence but a question of covenant. Also by ignoring the fact that the lessee had access to the vacant apartment on the second floor. Also the fact that the lessee knew them to be vacant, and by finding that the lessor had full knowledge that the weather was extremely cold and severe and omitting to find that the lessee had also such knowledge, and by finding that the lessor knew that the water pipes would freeze and burst if they were not so protected, and omitting to find that the lessee had the same opportunity for knowledge and greater familiarity and longer and more constant contact with the conditions existing in and about the leased premises. I presume it is intended that it shall become a rule of law in this state that the lessor owes such duty to the lessee under the circumstances herein detailed, and if this is true I think it furnishes a sufficient justification for this dissent.

I am authorized to say Mr. Justice KERWIN concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on February 3, 1914.