SKRZYPCZAK and another, Appellants, vs. KONIECZKA, Respondent.

*March 9—April 7, 1937.*

For the appellants there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

For the respondent there was a brief by *Bruce Walczak* and *George B. Skogmo,* attorneys, and *Louis S. Wiener* and *Ben J. Wiener* of counsel, all of Milwaukee, and oral argument by *Mr. Skogmo* and *Mr. Ben J. Wiener.*

FOWLER, J.    The plaintiffs ground their action on, (1) common-law negligence, and (2) violation of the safe-place statute.

(1) (a) One basis of the claim that the evidence set out in the statement of facts preceding the opinion raises a jury

question is that, over seven years prior to the accident involved, the defendant himself, upon complaint of a tenant of the apartment plaintiffs were occupying that the porch was weak, had "put nails himself" "right around the post" that gave way. The post was "loose" at that time. Whether this was done before or after the new floor had been laid on the porch does not appear. Of course if a landlord himself assumes to make repairs, whether obligated to make them under the terms of his lease or not, he must be held to the exercise of ordinary care in so doing. Such a rule is doubtless self-supporting, upon general principles. It was said by Mr. Justice TIMLIN, in *Moroder v. Fox,* 155 Wis. 503, 509, 143 N. W. 1040, in a dissenting opinion: "All will concede, I think, that if the lessor was guilty of negligence which was the proximate cause of the lessee's damage the lessor would be liable." *Wertheimer v. Saunders,* 95 Wis. 573, 70 N. W. 824; *Wilber v. Follansbee,* 97 Wis. 577, 72 N. W. 741, 73 N. W. 559; *McGinn v. French,* 107 Wis. 54, 57, 82 N. W. 724; and *Kuhn v. Sol. Heavenrich Co.* 115 Wis. 447, 451, 91 N. W. 994, directly or by implication support this statement. *Edwards v. New York & H. R. R. Co.* 98 N. Y. 245, 249, 50 Am. Rep. 659, so states directly. But we are not persuaded that the giving way of a post more than seven years after it was newly toenailed to the floor spells negligence or of itself permits of an inference of negligence in making the repair.

(b) It is the settled law of this state that a tenant takes premises in the condition in which they are when he leases them, and the landlord is not liable to the tenant for injuries sustained through their want of repair unless he has contracted to repair them, or unless the defect be a concealed one known to the landlord and not disclosed to the tenant and not discoverable by the tenant by exercise of ordinary care. *Kurtz v. Pauly,* 158 Wis. 534, 538, 149 N. W. 143. There is no evidence that the landlord in the instant case contracted

to make repairs. The testimony of the plaintiffs was that nothing was said about the matter when the premises were leased. There is no evidence that anything was ever said between the parties thereafter. In this situation no other inference is permissible than that the plaintiffs were obliged to make necessary repairs. The condition of the post and railing was not a concealed one, known to the landlord and not known to the tenant, nor can it be said that the method of fastening was not discoverable by the tenant in the exercise of ordinary care.

The plaintiffs in support of their claim of common-law negligence rely on a statement in *Flood v. Pabst Brewing Co.* 158 Wis. 626, 631, 149 N. W. 489, as follows:

". . . That a landlord is liable to a tenant and the invitee of a tenant for injuries received through defects in construction of a building rendering it dangerous, and which dangerous condition was known to the landlord when he executed the lease and not known or should not have been known to the tenant or invitee, is quite well settled."

Of course, if the method of fastening the post was a structural defect, the landlord must be held to have known that it existed. But if it was and was dangerous, this was or should have been known to the plaintiffs, as the method of construction was obvious to sight. Whether the method was a structural defect is discussed under (2).

(2) The plaintiffs contend that the building that comprised their apartment is a public building within sec. 101.01 (12), Stats.; that the evidence warrants inference by the jury that toenailing the post constituted a structural defect; and that the statute makes the owner responsible for injuries to tenants that are caused by such defects. The statute cited includes, among public buildings, "any structure used in whole or in part as a place . . . of . . . trade . . . by the public, or by three or more tenants," and sec. 101.06 requires that "every

owner of a . . . public building . . . shall so construct, repair or maintain . . . [it] as to render the same safe." The term "safe," as applied to public buildings, means "such freedom from danger to the . . . safety . . . of . . . the . . . tenants . . . as the nature of the . . . public building will reasonably permit." Sec. 101.01 (11), Stats.

The building comprising the flat occupied by the plaintiffs must be conceded to be a public building because the first story comprised two places of trade. Whether the railing was as safe as the nature of the building would reasonably permit would perhaps be a jury question, if not being safe under the statute of itself rendered the defendant liable. But in case portions of a public building are rented to tenants, maintenance in unsafe condition of the portion so rented to which the public does not have access does not bring the portion so rented within the statute. *Gobar v. Val. Blatz Brewing Co.* 179 Wis. 256, 191 N. W. 509. However, it was held in *Bewley v. Kipp,* 202 Wis. 411, 414, 233 N. W. 71, that the safe-place statute "does require a building occupied by three or more tenants to be structurally safe." It was also held at page 415 that "a tenant in a public building enjoys no freedom by reason of . . . [the safe-place statute] from the duties which devolve upon tenants of other buildings," and under the rule stated in (1) above, the duty of making repairs not due to structural defects falls upon the tenant. It was also held at page 415 that "whether the landlord or the tenant was responsible for its defective condition depends upon whether the defect was structural in its nature or whether it was the result of ordinary wear and tear." Under the rules here stated, assuming that the defect here involved was structural, the safe-place statute would apply if the lower floor of the building had been occupied by a lessee instead of by the owner, as the building would then have been occupied by three tenants. The owner was an occupant of the build-

ing. It would seem that liability for injury to a lessee should be made to depend on the plan of the building and the purpose for which it was built; and that if dependent on occupancy, occupancy of the building rather than tenancy as the term "tenancy" is used in the phrase "landlord and tenant" should control. The word "tenant" is not limited to the latter sense. The more general use of the word is in the broader sense of one in possession of the premises, whether as owner or otherwise. (See Webster's Dictionary.) Safety of the lessee is the object of the statute, and safety is not in fact at all dependent on whether one of the occupants is the owner. We are of opinion that if the defect here involved is deemed structural the case was for the jury under the statute.

To show that the defect is structural, the plaintiffs rely upon the testimony of their witness, a builder and contractor, that—

"It is bad building practice to fasten uprights of a porch to the floor merely by toenailing, because toenailing will not hold the post to the floor. Good building practice to make a building safe would require a bracket to be nailed or attached to the post on an angle to the floor and screwed into the post, or into a plate and fastened to the post, also to the floor. Good building practice would be to place a piece of lead between the post and the floor to prevent decay. . . . In my opinion a second-story porch constructed as this porch was merely by having the newel post toenailed to the floor is unsafe construction."

The plaintiffs are doubtless correct in their contention that this testimony, notwithstanding that there is evidence of another builder and contractor to the contrary, entitled them to go to the jury under the safe-place statute, unless we can say that by common knowledge such construction is the common practice and therefore cannot be considered to be unsafe. That it is the common practice is a matter of common knowledge. It is true that conceivably the construction might be

made more permanent and stronger by the use of bracing angle irons fore and aft the posts, or by some other method of construction. But the method used is not contrary to the building code adopted by the industrial commission upon advice and approval of the building code advisory committee, consisting of a dozen or so eminent architects and master builders. (See page 6 of the Code.) The building code applies to such buildings as the one here involved. (See Order 5003.) The only requirement respecting posts used in wooden construction considered necessary to comply with reasonable safety, is prescribed by Order 5323 (2), "Columns, Posts and Studs. All wood columns, posts and studs shall be cut true to the bearing surfaces which receive them." When "exposed to moisture, such as on the ground or on a grade floor, the foundation or bearing shall be of non-absorbent material and the plane of bearing shall be not less than two inches above the finished floor." (Code, pp. 97, 98.) We take judicial notice of this code. It has the force of criminal statutes in the sense that violations of its provisions are penalized. Sec. 101.28, Stats. It is at least of moment equal to the decisions of the public service commission and the reports and tariffs of a railroad company filed with the commission, of which the court takes judicial notice. *Chicago & N. W. R. Co. v. Railroad Comm.* 156 Wis. 47, 145 N. W. 216, 145 N. W. 974; *Waldum v. Lake Superior T. & T. R. Co.* 169 Wis. 137, 170 N. W. 729; *Wisconsin Power & Light Co. v. Beloit,* 215 Wis. 439, 254 N. W. 119. We infer that the word "posts," as used in the order above quoted, refers to posts supporting structures above them. In view of absence from the code of provisions applicable to such buildings as the instant one prohibitive of the practice commonly followed in railings such as are here involved, and the statutory duty of the industrial commission to "fix and order such reasonable standards, rules or regulations for the construc-

tion . . . of . . . public buildings, as shall render them safe" (sec. 101.10 (5), Stats.), and the commission's action pursuant to that statute, we are of opinion that a jury would not be warranted in finding the structure here involved unsafe. The direction of the verdict was therefore correct.

*By the Court.*—The judgment of the circuit court is affirmed.