GILL BUILDING COMPANY, Appellant, vs. CENTRAL GARAGE COMPANY, Respondent.

*November 8—December 5, 1950.*

For the appellant there was a brief by *Spohn, Ross, Stevens & Lamb* of Madison, and oral argument by *Francis Lamb*.

For the respondent there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *Walter P. Ela.*

FRITZ, C. J. In June, 1927, plaintiff leased to defendant for ten years a garage building owned by plaintiff which was adapted for use and intended by the parties to be used by defendant as a garage for parking and servicing automobiles. The lease required defendant to pay plaintiff $9,600 per annum as rental, and also as additional rental forty per cent of the "net profits of the total business and transactions done by the lessees each year." That percentage was reduced subsequently to twenty-five per cent. The lease reserved to the landlord the use of the roof of the building and that part thereof leading up to the roof, and also reserved the right to build additional stories on the building. Plaintiff terminated the lease as of December 31, 1946, and defendant vacated the premises accordingly.

Plaintiff alleged in its complaint that prior to vacating the premises defendant sold for $3,921 certain of its personal garage-equipment property used by it in conducting the garage business; and that of said amount $3,535.62 was net profit, of which defendant had agreed under the lease to pay plaintiff,—in addition to said rental of $9,600,—twenty-five per cent before deducting the twenty-five per cent as rent and before computing and deducting income taxes of the lessee's total business and transactions in a year. Defendant admitted that upon plaintiff's termination of the lease and defendant's vacation of the leased premises by December 31, 1946, it sold its personal garage-equipment property for $3,921; but denied that any part of the proceeds therefrom was part of any income which was subject to the terms or provisions of any lease or agreement pertaining to defendant's occupancy of the premises; and denied that plaintiff was entitled to any share, right, or interest in any part of defendant's proceeds or profits on its sale of its garage-equipment property; and denied that it owes plaintiff anything whatever on account of defendant's

occupancy of the garage premises. The court found that by plaintiff's termination of the lease, the sale of defendant's garage-equipment property was made necessary and that plaintiff had no right, title, or interest in said property. The court concluded the plaintiff is not entitled to recover any part of the sale price or profits on the sale of the garage-equipment property, and judgment was entered to that effect.

As the trial court stated in its decision in relation to plaintiff's cause of action to recover twenty-five per cent of defendant's gain on the sale of its garage-equipment property:

"The present is plainly a situation where defendant was disposing of its own property upon which plaintiff had no strings. Defendant paid its own good money for the property. None of plaintiff's money went into it. . . . The 1946 income-tax return of defendant was prepared by a concededly qualified accountant and the profit upon sale of the equipment was included as a *capital gain, not a profit from operation of the business*. This unquestionably was correct. In the most general and sweeping sense, 'transactions done by the lessees' would extend to sale by lessee of its own personal property. But by such a construction the plaintiff would be permitted to assess twenty-five per cent upon the profits of lessee anywhere, on anything. . . . We do not place such an extreme interpretation upon a lease which is calling for rent upon specified premises. Be it remembered that the twenty-five per cent is expressly set out 'as rent,' in addition to the fixed cash amount. . . . The twenty-five per cent is predicated on net operating income of the business, not on capital gains or losses on sale of tangible property—or of securities owned by the lessee."

The provision in the lease that plaintiff is entitled to twenty-five per cent of the "net profits of the total business and transactions done by the lessees" is obviously in reference to the lessee's profits in its operation of the garage building which, as plaintiff specified in the lease, "shall be used by the lessees for garage purposes generally, including the storing, repairing, buying, and selling of automobiles and motor ve-

hicles, and the renting of space or stalls therefor." It is for the use of the premises as thus stated that plaintiff is entitled to twenty-five per cent of the net operating profit in addition to the annual rental of $9,600. There is no provision which can be deemed to entitle plaintiff to any part of defendant's capital gain on its sale of its garage-equipment property in excess of the depreciated book value thereof. As the phrase "total business and transactions done by the lessees" evidently means defendant's business and transactions in using the leased premises for the purposes specified in the lease, when, because plaintiff terminated the lease, the defendant sold its garage-operating equipment at a capital gain over the depreciated value thereof, its transactions and business in that respect were on its own accord and not as lessee.

In support of defendant's counterclaim to recover damages which it sustained by reason of plaintiff's neglect and failure to repair the leaky roof of the building, there was proof to the following effect. Under the terms of the lease there was an express provision reserving the roof for the plaintiff's own use. Up to December 31, 1946, the roof had leaked for about two and a half years, and during that time defendant lost the use of six storage stalls for automobiles; and plaintiff had full knowledge of the leaky condition of the roof, and was repeatedly notified thereof by defendant at least once or twice a month, and informed of the damage to defendant; but plaintiff negligently failed to properly repair the roof and stop the leakage. Because of the leaky condition the defendant lost the rental income of $10 a month from the six storage stalls for two and a half years, making defendant's total loss of income $1,800. As plaintiff would have been entitled to twenty-five per cent of that income if it had been received, defendant suffered damages of $1,350 through plaintiff's neglect to repair the roof; and for defendant's recovery of that amount from plaintiff the court granted judgment for defendant's recovery thereof from plaintiff.

The judgment for defendant's recovery of that amount must be affirmed. The lease expressly provides that the building shall be used by the lessee for garage purposes generally, including storing of motor vehicles and the renting of space or stalls therefor; and that plaintiff reserved to itself the use of the roof of the building and the right to build additional stories on the building throughout the term of defendant's occupancy, and plaintiff repeatedly accepted responsibility for keeping the roof in a proper state of repair, and in 1937 or 1938 plaintiff entirely replaced the roof, and later had repairs made thereon, and during the last two and one half years of defendant's occupancy, plaintiff was repeatedly notified by defendant of leaks in the roof and made attempts to repair the same, and did not claim that defendant had any duty whatever in respect to such leaky roof. But plaintiff neglected and failed to properly repair the roof or stop the leakage, and as a result thereof defendant was deprived of the use of space for storage which would otherwise have been available to defendant on said premises, and thereby sustained the loss of income and damages as stated above.

Plaintiff contends that in the absence of an express covenant or condition in the lease for making repairs to the premises, a landlord is not responsible; and that he is not liable to the tenant for injuries sustained for want of repair of the premises unless he contracted to repair them. However, in the case at bar the evidence establishes, as the court found, that plaintiff, as landlord, did assume to make repairs to the roof and never claimed it was up to defendant to repair it; and that as plaintiff did assume to make the repairs, it must be held to the exercise of ordinary care in the making of them, and because of plaintiff's negligent failure in that respect defendant is entitled to recover damages for the loss which it sustained by reason of plaintiff's negligence. As the trial court stated in its decision:

There was an express provision in the original lease reserving the roof to plaintiff's own use, and no other lease was executed, although the monetary provisions were varied by oral agreement. Plaintiff had full knowledge of the leaky condition of the roof, and was informed of the consequent damage, and accepted the responsibility for repair of the roof, and entirely replaced it at one time and later had repairs made on it, and sued the roofing contractors for their failure to adequately repair.

The court concluded,—

". . . it is the law that a landlord, reserving portions of a building for his own use, has the duty to use reasonable care to keep those particular portions in repair. This is not a contract duty but arises from the law of negligence. See *Kuhn v. Sol. Heavenrich Co.* 115 Wis. 447, 450."

As this court stated in the *Kuhn Case, supra* (p. 449),—

"That there is a duty resting on the landlord in such a situation, to not cause injury to his tenant, and to prevent such injury, has been held in many jurisdictions in actions grounded on negligence. But there is no authority worthy of our consideration, to support the idea that the duty is one resting in contract."

And in *Skrzypczak v. Konieczka,* 224 Wis. 455, 458, 272 N. W. 659, this court stated,—

"Of course if a landlord himself assumes to make repairs, whether obligated to make them under the terms of his lease or not, he must be held to the exercise of ordinary care in so doing. Such a rule is doubtless self-supporting, upon general principles. It was said by Mr. Justice TIMLIN, in *Moroder v. Fox,* 155 Wis. 503, 509, 143 N. W. 1040, in a dissenting opinion: 'All will concede, I think, that if the lessor was guilty of negligence which was the proximate cause of the leesee's damage the lessor would be liable.' " (Citations.)

It follows that the judgment dismissing plaintiff's complaint and for defendant's recovery on its counterclaim of $1,350 from plaintiff must be affirmed.

*By the Court.*—Judgment affirmed.